STATE, Respondent, *v.* STARKWEATHER, Appellant.

(No. 6,788.)

(Submitted March 6, 1931. Decided March 27, 1931.)

[297 Pac. 497.]

*Messrs. Ayers & Ayers,* for Appellant.

*Mr. L. A. Foot,* Attorney General, and *Mr. T. H. MacDonald,* for the State.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The defendant was convicted of burglary in the first degree and his punishment fixed at imprisonment in the penitentiary for a period of one year by the verdict of the jury. Judgment against him was entered accordingly. He moved for a new trial, which was denied, and thereupon appealed to this court from the judgment and the order denying him a new trial.

It appears that Kulay, the prosecuting witness, was the owner of a building in Roundup, Montana, fronting on Main Street, in which he conducted a cigar-store and pool-hall. In the rear end of the pool-hall there is a toilet, and also a card-room. The card-room is arranged so that by use of a peep-hole one can see what is going on in the pool-hall. In the front end of the building there is a room called the barber-shop, which has two doors, one opening upon Main Street and the other, called the back door, providing an entry into the pool-hall. Over the back door there is a long transom; it is built like a window and swings perpendicularly into the barber-shop.

On August 4, 1927, the prosecuting witness leased the barber-shop to Mr. Mills, the father-in-law of the defendant, for a period of five years. It was understood that defendant was to operate the barber-shop. Kulay gave Mills keys to the front and back doors of the barber-shop, and Mills, with the knowledge of Kulay, gave the keys to the defendant. The lease was written, but at the time of the trial was lost. During the period of nearly two years prior to the occurrence which resulted in this prosecution defendant had entered the pool-hall through the back door of the barber-shop at pleasure, to use the toilet and to go to the basement to keep a fire in a heater which provided hot water for use in the barber-shop. It was, said Kulay, defendant's duty to "fix his own fires."

In the spring of 1929 Kulay became convinced that someone was stealing goods from his cigar-store and his suspicions fell upon the defendant. During May and June, 1929, Kulay sought to catch the thief and was unable to do so. Upon one occasion Kulay and a special police officer were in the card-room watching for the thief, when, about a quarter of 5 in the morning, defendant unlocked the door between the barber-shop and the pool-hall, went to the basement, shook the grate in the fire-box, and returned to the barber-shop, without molesting anything in the cigar-store. On the night of July 3, Kulay remained in his pool-hall nearly all night. Some

time during the night he wired shut the door between the barber-shop and the pool-hall and, with another, secreted himself in the card-room. He testified that some time in the morning, before sunrise, he heard someone come into the barber-shop from the street and, looking through the peep-hole, saw defendant "climb over the transom" into the pool-hall. Defendant proceeded to the toilet, then went to the cigar-case and took two cigars (which he paid for next day), whereupon Kulay and his companion rushed into the pool-hall and Kulay took hold of defendant, accusing him of being the thief he had been seeking. Defendant merely inquired why Kulay had wired that door.

Kulay's companion did not take the stand in the state's case in chief, and when called in rebuttal was not permitted to testify.

Mr. Mills and Charles F. Maris, testifying in behalf of defendant, swore that the lease gave Mills the right to enter the pool-hall from the barber-shop without any restrictions. The lease mentioned specifically, said Maris, who drew it, that Mills "was to have the use of the toilet and to go through to take care of the water plant in the basement—there wasn't any limitation on it."

The case turns upon whether there was a limitation upon defendant's right to enter the pool-hall.

As we view the record after a comparison of all the testimony there can be little, if any, question that the lease did not contain any restrictions whatsoever as to the right of the defendant to enter the pool-hall at any time during the day or night that he saw fit to do so.

Section 11346, Revised Codes 1921, provides that "every person who enters any house, room, apartment, * * * with intent to commit grand or petit larceny, or any felony, is guilty of burglary."

There is no breaking in entering a house or room and therefore no burglary, if the person who enters has a right to do so. (See 9 C. J. 1016.) As was said in *State* v. *Mish,*

36 Mont. 168, 122 Am. St. Rep. 343, 92 Pac. 459, "in order to constitute a burglarious entry the nature of the entry must be itself a trespass." A trespass is the invasion of the possession of another. (*Coburn Cattle Co.* v. *Hensen,* 52 Mont. 252, 157 Pac. 177; *Thrasher* v. *Hodge,* 86 Mont. 218, 283 Pac. 219.)

Under the facts shown Kulay had no right to wire shut the door.

As the defendant had the right to enter the pool-hall and in entering it did not wrongfully interfere with the possession of Kulay, he was guilty of no greater offense than that of petit larceny.

Upon the conditions shown in the record, the judgment cannot stand, and must be reversed. The cause is remanded to the district court of Musselshell county, with direction to dismiss the action.

ASSOCIATE JUSTICES GALEN, FORD, ANGSTMAN and MATTHEWS concur.