RAY WARD, LAWRENCE WARD, CHARLES WARD, AND LESTER THOMPSON, PLAINTIFFS AND RESPONDENTS, v. CHEVALLIER RANCH COMPANY, A CORPORATION, DEFENDANT AND APPELLANT.

No. 10096.
Submitted April 1, 1960. Decided July 29, 1960.
Rehearing denied September 13, 1960.
354 P.2d 1031.

Mr. Justice Adair dissented.

C. W. Leapheart, Jr., Helena, appeared for appellant and argued orally.

Ralph J. Anderson, Helena, appeared for respondents and argued orally.

The Honorable WILLIAM M. BLACK, District Judge sitting in place of MR. JUSTICE ANGSTMAN, delivered the Opinion of the Court.

This is an appeal from a judgment made and entered on the 8th day of May 1959, in favor of the plaintiffs and against the defendant in the district court, and also from the order denying the defendant's motion for a new trial.

The plaintiffs filed their complaint in trespass on June 17, 1957, alleging damages in the amount of $1,200. After the demurrer was overruled, the defendant filed its answer denying the general allegations in the complaint and with a further and affirmative defense alleging the propriety of any trespass, if there was one, and denying that it ever had received written notice demanding damages for such trespass.

Thereafter plaintiffs filed a reply. Issue being joined the action came on for trial before a jury in Lewis and Clark County, Montana, which rendered a verdict for the plaintiffs.

The plaintiffs and respondents herein, Ray Ward, Lawrence Ward, Charles Ward, and Lester Thompson, were the owners of nine unpatented mining claims located in Powell County, Montana, not far from Elliston, in the unorganized Little Blackfoot

Mining District. These claims were principally in two groups known as the Hoosier Group and the Hard Luck Group. The plaintiffs had two small cabins on the Hoosier Group, and three small cabins on the Hard Luck Group. All of these cabins were one-room cabins, and were utilized by the plaintiffs and their families when they were in the area working their mines. The defendant and appellant herein owned several bands of sheep which it grazed in that area during the summer months. During the summer of 1956, the plaintiffs charged that defendant, the owner of the sheep, had caused damages to the plaintiffs' mining claims, and alleged that the sheep grazed on the claims and had damaged the roads running to the various claims, and also that the sheep damaged and polluted the water in a spring which was located close to one of the cabins and that the sheep while in that locality dropped their manure and urine near the cabins and in the spring, and caused a stench and offensive odor to arise therefrom, so that the cabins could not be used to live in thereafter, and that the spring could not be used until it was cleaned out.

Plaintiffs alleged they suffered damages in the amount of $1,200.

The record indicates that most of the roads were Forest Service or public roads; that the only private road that had been built was built on the basis of a Forest Service permit. The defendant alleged that no damage was done to any property belonging to plaintiffs.

The defendant, Chevallier Ranch Company, is a sheep ranching company with its base of operations in Lewis and Clark County. In the summer of 1956, it had a permit from the U. S. Forest Service to run sheep on Helena National Forest lands in the upper reaches of the Little Blackfoot River wherein the mining claims of the plaintiffs were located. Their allotment included approximately twenty-seven sections of land in that national forest.

Plaintiffs' evidence clearly indicates that all of their mining claims were definitely marked and the corners definitely located on all of the claims.

Plaintiffs offered in evidence Exhibits 1 to 9, inclusive, which were received in evidence without objection. These exhibits were Certificates of Location of the plaintiffs' various mining claims.

The only testimony from the defendant was the testimony of Phil Chevallier to the effect that he did not see any markers or corners or monuments indicating boundaries of the claims, and on cross-examination he testified further that he did not look for any boundary markers. Garth Stafford, a sheepherder for defendant, testified that he did not see any such markers. This testimony is what is known as negative testimony and is in conflict with positive testimony of the plaintiffs. The exhibits above-mentioned are positive testimony to the effect that the corners were properly marked and the boundaries thus defined and established.

The testimony of Eric P. White, who was District Ranger of the Helena National Forest in 1956, as to the damages caused by the sheep trespassing is fair and impartial. He testified as to conditions around the mining cabins as follows:

"Q. What did you see with reference to the conditions at that time? A. Well, what I saw didn't make me feel very good because it seemed that sheep had been allowed to bed close to the mining cabins where I told him to stay away from. As a matter of fact, the time spent there seemed to be quite a long time; we have a rule, one night to a bed ground, but they were there longer than one night, I know that."

The questions at issue are:

(1) Were the boundaries and corners of the land involved herein marked and designated in such manner as to notify the public as to the location of plaintiffs' claims?

(2) Was a trespass committed on the mining claims by defendant's sheep, which trespass interfered with the plaintiffs' mining operations and damaged their property?

By its instruction No. 14, the court stated the law of the case . with respect to owners of unpatented mining claims in these words: "You are instructed that the owners of unpatented mining claims are entitled to the possession and use of so much of the surface of the claim as is necessary for the conduct of his mining operations only, and that all persons cannot interfere with such possession and use, and if others do so interfere with the possession and use necessary for the mining operations, then such persons are responsible in damages for such interference."

The question presented to the jury for its determination was whether or not the boundaries of the land here involved were marked as required. The jury determined such issue in favor of the respondents as evidenced by their verdict.

The district court further instructed the jury in the language used in section 46-1413, R.C.M. 1947, in its instruction No. 13.

Appellant asserts that by reason of the provisions of this statute respondents may not recover other than nominal damages because no written notice demanding a sum certain for damages by reason of the trespass was ever given to it by respondents. This section is clear and unambiguous and provides that "No person owning or possessing agricultural or grazing land, or patented mining claims" can recover other than nominal damages without giving written notice. The claims here were unpatented mining claims so the provisions of the statute were inapplicable.

The evidence given at the trial of this action in the lower court conclusively proves that the boundaries of the land involved herein were marked and the corners established.

The proof was sufficient to warrant the verdict. The amount of damages fixed by the verdict of the jury, at the sum of $700, does not appear excessive. This court will not disturb the award, unless its determination appears to have been in-

fluenced by passion, prejudice, or some improper motive, or unless the amount is outrageously disproportionate to the wrong, or to the situation or circumstances of the parties.

The verdict is not contrary to the instructions of the court.

Having considered all of the specifications of error assigned by appellant, we find no merit in the same.

For the foregoing reasons the judgment of the district court is affirmed.

MR. CHIEF JUSTICE HARRISON, MR. JUSTICE CASTLES, and THE HONORABLE H. B. HOFFMAN, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ADAIR dissenting:

I dissent.

This is an action to recover damages for the alleged trespass by defendant's sheep on certain United States Forest Service Lands situate in Powell County, Montana.

While the action at first blush may seem innocuous, yet, in fact, it vitally affects a large segment of one of the basic industries of this state. The ramifications of the somewhat novel holding of the majority opinion herein, written by District Judge William M. Black, are bound to adversely affect practically ever stockman in Montana.

The instant action is one of first impression in this jurisdiction, if not one of first impression in the nation. The research and briefs of the able counsel representing the respective parties litigant have failed to produce any decision or other authority that is factually in point with the facts which obtain in this action.

My own research has likewise failed to reveal any decision involving the law of trespass, wherein the facts are similar to those before us on this appeal.

The lack of authority on the questions here presented is signif-

icant in that the instant case may be the first in the United States to hold that a person, or a corporation, that goes upon lands with the permission of the owner of such land may nevertheless be guilty of trespass and be held liable in money damages to others who do not own such land.

The particular lands upon which the defendant's sheep grazed is owned by the United States of America. Such land was and is administered by the United States Forest Service.

In the instant case, the defendant Corporation had paid a monetary consideration to, and received a permit from the owner of the lands, the United States of America, for the privilege and right to be allowed to graze defendant's sheep upon such federally owned property.

The plaintiffs had located mining claims upon a portion of such federally owned forest service land, which location gave to the plaintiffs the exclusive right to mining privileges on the claims so located. However, the plaintiffs' location of the mining claims gave to the plaintiffs no more than the exclusive possession of the lands for mining purposes, but such right to such possession for mining purposes did not divest the United States of its legal title. The plaintiffs' location of their mining claims did not segregate the unpatented mining claims from the public domain for any and all purposes, nor did such location appropriate the lands to the locators' sole and exclusive use for any and all purposes. See Teller v. United States, 8 Cir., 1901, 113 F. 273, 280; United States v. Rizzinelli, D.C.N.D. Idaho, 182 F. 675, and United States v. Etcheverry, 10 Cir., 1956, 230 F.2d 193.

Since the plaintiffs here did not acquire or own the grazing rights in, to, and on the surface of these unpatented mining claims, how may it be held that the plaintiffs are entitled to maintain an action for trespass against this defendant, who bargained and paid for the grazing rights and privileges in said land, the true owner being the United States, with whose permission the defendant went upon the land with its livestock?

The plaintiffs asserted damages from loss of the forage, yet they did not own, nor did they possess the forage. They asserted they were damaged by the presence of defendant's sheep upon the land because of the *natural* functions of the animals, which were lawfully upon the property by virtue of a grazing permit issued by the United States. If such is to be the rule of law which obtains in Montana, then every stockman using the United States forests will be open and subject to like claims for damages even though he has been issued valid permits to be on the property, and even though, as here, he never commits an unlawful act thereon after he lawfully enters upon the property. Under the rule announced in the majority opinion herein, the stockman will be liable for damages merely because his stock, while grazing, continue to perform their natural bodily functions, and deposit manure upon the lands upon which the animals graze.

This court, in State v. Starkweather, 89 Mont. 381, 297 P. 497, 498, citing Coburn Cattle Co. v. Hensen, 52 Mont. 252, 157 P. 177, and Thrasher v. Hodge, 86 Mont. 218, 283 P. 219, held that "A trespass is the invasion of the possession of another."

Trespass is defined in 87 C.J.S., Trespass, § 4, page 958, as:

"The gist of trespass is the doing of an unlawful act or of a lawful act in an unlawful manner to the injury of another's person or property. A cause of action for trespass does not arise from mere omission to perform a duty; there must be some affirmative act *by violence or force,* direct or imputed, and the injury must be immediate and not consequential." Emphasis supplied.

The essential elements necessary to constitute trespass are absent in this case. The entry upon the property by the sheep was lawful. While upon the ground the sheep grazed and performed other natural functions, none of which were done in an unlawful manner. The United States, and only the United States, owned the grazing privileges on this land. The defendant paid a monetary consideration for such grazing privileges

and entered upon the land with the permission of the United States. While so grazing, the sheep at no time interfered in any manner or form with the mining operations or the mining rights of the plaintiffs which were and are the only rights granted to and possessed by the plaintiffs, or as to which the plaintiffs could lawfully complain of trespass.

Here, the plaintiffs as possessors of the mining claims were at no time on the property for the purpose of mining, while defendant's sheep were grazing thereon. They contend they were damaged solely because the sheep were present on their mining claims. Such contention is untenable in view of the fact that the sheep were present by, and with the consent of, the United States, the dominant owner of the property, and for this reason the complaint fails to state a cause of action.

In my opinion, the judgment of the district court should be reversed, and the action should be ordered dismissed.