**Charles E. SMITH and John D. Anaruma, Appellants,**

v.

**STATE of Alaska, Appellee.**

**No. 57.**

Supreme Court of Alaska.

June 6, 1961.

Rehearing Denied July 26, 1961.

Peter J. Kalamarides, Anchorage, for appellants.

George N. Hayes, Dist. Atty., Dorothy Awes Haaland, Asst. Dist. Atty., Anchorage, for appellee.

Before DIMOND and AREND, JJ., and FITZGERALD, Judge.

DIMOND, Justice.

The question presented is whether the evidence is sufficient to sustain convictions of burglary as to each of the appellants, Anaruma and Smith.

The state's principal witness was Jack Sexton, an employee of an automotive parts store, the Airport Machinery Company. Late one night, according to his testimony, he visited the Pink Garter, a so-called "night club" near the city of Anchorage, and proceeded to drink a considerable quantity of alcohol. When he reached the point of near insensibility, he claimed that someone at the club inveigled him into signing several checks. Later he was contacted by Anaruma who said that he could get the checks back if Sexton would arrange for Anaruma to get into the Airport Machinery Company office so that he could destroy certain records kept there by the owner, Joe Columbus. Sexton related this incident to Columbus, and the police were notified.

Under direction of police officers, and with the express permission of Columbus, Sexton met and conversed with Anaruma on several occasions and then relayed to the police information he claimed to have obtained.

According to Sexton, eventually it was planned that Anaruma would get into the company office on August 22, 1959. The police were notified by Sexton and they arranged a "stake-out" around the building. At approximately 5:30 or 6:00 o'clock that evening Anaruma arrived and knocked at the front door. Sexton, who was inside, unlocked and opened the door and let him in. Anaruma was carrying a large paper sack, the contents of which Sexton was unable to identify except for a couple of magazines. Sexton then left the premises and did not return.

At about 9:00 p. m. Smith made an appearance in response to a phone call from Anaruma and entered the building by a back door. Anaruma and Smith were observed by police officers walking back and forth in the office. Shortly after Smith's arrival they both came out the front door and were promptly arrested. After Anaruma and Smith had been taken to the police station, officers returned to the building and conducted an investigation. They made no attempt to find fingerprints, and there was no evidence that the office safe or anything else in the office had been tampered with. A brown paper sack was found containing a number of tools, but ownership was not traced. Anaruma and Smith were convicted of burglary and this appeal followed.

■ There are two basic elements of the statutory crime of burglary: (1) the breaking and entering of a building, and (2) the accompanying intent to steal or commit a felony therein.[1] However, the requirement of an actual breaking has been discarded, and any unlawful entry of a building with the requisite criminal intent will suffice.[2]

As to Anaruma, the question here is whether he entered the building with the permission of the owner[3] and, if he did so, whether this was "an unlawful entry" within the meaning of the statute.

The state contends that it was proper to submit to the jury the question of the owner's permission, or lack of it, since the evidence was not clear that Columbus had given his consent to Sexton to allow Anaruma to enter the building. But we find the evidence perfectly clear on this point. On cross-examination, Sexton testified as follows:

"Q. And when Mr. Anaruma came up, your statement says that you opened the front door for him? A. Yes, sir.

"Q. You had the key to the front door? A. No, sir, I did not.

"Q. The front door was locked? A. Locked.

"Q. And you opened the lock? A. Yes, sir.

"Q. And you let him in? A. Yes, sir.

"Q. And Mr. Columbus knew about this plan, didn't he? A. Yes, sir, he did.

1. Section 65-5-32 A.C.L.A.1949 provides: "That if any person shall break and enter any building * * * in which any property is kept, with intent to steal therein or to commit any felony therein, such person shall be deemed guilty of burglary, * * *."

2. Section 65-5-34 A.C.L.A.1949 provides that " * * * every unlawful entry of any building * * * mentioned in section 65-5-32, with intent to steal or commit any felony therein, shall be deemed a breaking and entering of the

same within the meaning of such section 65-5-32."

3. The trial court's instruction No. 4 to the jury read in part as follows: " * * * if you find that the defendants or one or more of them entered a building belonging to another person without the permission of such person and without lawful purpose but with intent to steal by opening a door or otherwise, you will find that there has been a breaking and entering as charged in the Indictment."

"Q. And he—he had given his consent to you and his authority to you to do anything necessary to cooperate with the police in trapping Danny Anaruma, isn't that true? A. Yes, sir.

"Q. And when you unlocked the front door and let Mr. Anaruma in it was with Mr. Columbus' express authority that you do so, wasn't it? A. Yes, sir."

The state acknowledges the existence of this testimony, but argues that the jury did not accept it in the light of other evidence. It is not pointed out, however, what such other evidence consists of, and based upon our own search of the record all that we have discovered is the testimony of Columbus, who was Sexton's employer and also the owner of the building. Under interrogation by appellants' counsel he said:

"Q. Other witnesses for the Prosecution have testified that you cooperated with the police, and Mr. Sexton testified that he had authority to cooperate with the police in—in what shall we say —apprehending Anaruma in an attempt to burglarize your premises, that's true, isn't it? A. Yes.

"Q. What was the extent of your authority to Mr. Sexton? Did you agree that he should cooperate with the police? A. That's right.

"Q. And you agreed, didn't, you that if it was necessary to let the people in, or whatever was necessary be done, could be done by Mr. Sexton? A. Well, I told him to follow any instructions the police gave him.

"Q. He had full authority, in that respect? A. The only authority he had was whatever the police decided that he should do.

"Q. And if the police gave him authority to let these people in so they could be caught there, that was with your sanction, wasn't it? A. Yes."

This evidence points to only one conclusion: Anaruma entered the building with the owner's permission. There was no evidence from which it could be inferred that consent was lacking. Consequently, under the trial court's interpretation of what constituted an unlawful entry, i. e., an entry without permission of the owner,[4] there was no proof of an essential element of the crime of burglary and Anaruma was entitled to a judgment of acquittal.[5]

The state argues that even if Anaruma went into the building with the owner's consent, he can still be convicted of burglary because his intent to steal made his entry unlawful. It is true that where the element of breaking has been done away with, some courts have held that a consent to enter is no defense.[6] But in those cases the only statutory requirement was a simple "entry", with the requisite intent, and not an "unlawful entry." Even here the courts are not unanimous. In Montana, as in California, Arizona and Idaho, only an entry is required; but the Montana Supreme Court has held that in order to constitute burglary the act of entry must be itself a trespass, and that there is no burglary if the person who enters has a right to do so.[7]

The Alaska statute does not say or suggest that a simple entry is presumed to be unlawful if the requisite intent is present. The character or kind of entry is expressly qualified; it must be unlawful in itself, that is, trespassory, and without regard to the second element of the crime, the intent to steal. Under the plain language of the statute burglary sanctions cannot be im-

4. Note 3 supra.

5. Britton v. State, 1940, 145 S.W.2d 878, 140 Tex.Cr.R. 408.

6. People v. Barry, 1892, 94 Cal. 481, 29 P. 1026, 1027; People v. Brittain, 1904, 142 Cal. 8, 75 P. 314, 315; People v. Corral, 60 Cal.App.2d 66, 1943, 140 P.2d 172, 175; McCreary v. State, 1923, 25 Ariz. 1, 212 P. 336; State v. Bull, 1929, 47 Idaho 336, 276 P. 528, 529–530.

7. State v. Starkweather, 1931, 89 Mont. 381, 297 P. 497, 498.

posed upon one who enters a building lawfully, i. e., by right or consent.[8]

■ This disposes of the case against Anaruma. As to Smith, the state argues that his entry was unlawful because there was no evidence to indicate that Anaruma had authority to admit him. But this is not what the record shows. The owner of the building had given Sexton full authority to cooperate with the police; to follow any instructions the police gave him; to do whatever the police decided that he should do. In fact, Columbus admitted that this authority extended to letting "these *people* in so *they* could be caught there." (Emphasis ours.) The police had anticipated that possibly an attempt would be made to rob the office safe, and it was also obviously anticipated that Anaruma would not be the only one involved. Before Sexton left the building he knew that Anaruma was expecting a phone call, and had assumed that someone intended to join him. The police had the same expectations. They commenced their surveillance of the premises at 6:00 p. m., at which time they knew of Anaruma's presence in the building. They had men stationed in such a manner as to be able to apprehend a vehicle should it come along. They made no move until approximately 9:00 p. m. when Smith arrived, and as he entered the building by a back door this was a prearranged signal for police officers to immediately converge upon and pick up assigned positions close to the building. All of the evidence points to the fact that Smith's entry was as much with the consent of the owner as was Anaruma's.

Since an essential element of the crime of burglary—an unlawful entry—was not established, the evidence was insufficient to sustain the conviction of such offense as to either of the appellants. The trial court *ought to have granted the motions for judgment of acquittal* made at the close of all of the evidence.

In view of the result reached here, it is not necessary to consider other alleged errors. The judgments are reversed, and the cases are remanded to the superior court with directions to vacate the judgments of conviction and commitment, and to enter judgments of acquittal as to each of the appellants, Anaruma and Smith.

NESBETT, C. J., took no part in the consideration or decision of this case.

8. There is authority to the contrary. In Arkansas the burglary statute also required an unlawful entry, but the Supreme Court of that state has held that any entry, regardless of its character, is unlawful if accompanied by the necessary criminal intent. Pinson v. State, 1909, 91 Ark. 434, 121 S.W. 751, 753. We disagree with that interpretation. It results in a nullification of the statutory requirement. See 51 Colum.L.Rev. 1009, 1015 (1951).