Argued May 2, affirmed November 10, 1966

STATE OF OREGON *v.* RALPH BRUCE KEYS

419 P. 2d 943

*Gary D. Babcock,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Lawrence A. Aschenbrenner, Public Defender, Salem.

*Richard J. Courson,* District Attorney, Pendleton, argued the cause for respondent. With him on the brief was Michael S. Killoran, Deputy District Attorney, Pendleton.

Before McAllister, Chief Justice, and Perry, Sloan, Goodwin, Denecke, Holman and Lusk, Justices.

PERRY, J.

The defendant was convicted of two separate burglaries not in a dwelling house and appeals from each judgment. Since the same issues are raised on each appeal, they have been consolidated.

The evidence in each case discloses that the defendant with others entered pay telephone booths in Pendleton, Oregon, broke open the coin boxes attached to the telephones, and removed the money therefrom.

The defendant's principal contention is that, "since the telephone booths which defendant broke into were open to the public 24 hours a day" there was no unlawful entry as required to constitute the crime of burglary under ORS 164.240, and, therefore, the trial court erred in overruling his motion for a directed verdict of not guilty.

The question thus presented by this appeal is whether the entry of a building to which the public is invited for the purpose of transacting business becomes a burglarious entry when there is evidence from which a reasonable conclusion may be drawn that the entry made was not in response to the invitation extended to the general public, but was made in response to an intent formed prior to entry to enter and commit a felony or steal therein.

At common law an actual physical breaking of the structure was required to constitute a burglarious entry, except that the common law did recognize, as a constructive burglarious breaking, entries obtained by fraud, threats, trickery, artifice or pretense.

In Cooley Blackstone, Book IV, ch 16, p 226-227, it is stated:

"* * * (f) There must in general be an actual breaking: not a mere legal *clausum fregit* (breaking the close) (by leaping over invisible ideal boundaries, which may constitute a civil trespass), but a substantial and forcible irruption. As at least by breaking, or taking out the glass of, or otherwise opening, a window; picking a lock, or opening it with a key; nay, by lifting up the latch of a door, or unloosing any other fastening which the owner has provided. * * * (g) But to come down a chimney is held a burglarious entry; for that is as much closed as the nature of things will permit. (h) So also to knock at the door, and upon opening it to rush in, with a felonious intent: or under pretence of taking lodgings, to fall upon the landlord and rob him; or to procure a constable to gain admittance, in order to search for traitors, and then to bind the constable and rob the house; all these entries have been adjudged burglarious, though there was no actual breaking; for the law will not suffer itself to be trifled with by such evasions, especially under the cloak of legal process." See also to the same effect Hawkins' Pleas of the Crown, Vol I, p. 130.

ORS 164.240 reads as follows:

"Any person who breaks and enters any building within the curtilage of any dwelling house, but not forming a part thereof, or breaks and enters any building or part thereof, booth, tent, railroad car, vessel, boat, or other structure or erection in which any property is kept and which is not a dwelling house, with intent to steal or to commit any felony therein, is guilty of burglary and shall be punished upon conviction by imprisonment in the penitentiary for not more than 10 years."

■ Since the word "breaking" as used in the common law with reference to the crime of burglary had a

definite and fixed meaning which included fraudulent and surreptitious entries, it is the established rule that the legislature used the term "breaking" in its common-law sense with reference to the statutory crime of burglary. *State v. Tauscher,* 227 Or 1, 360 P2d 764, 88 ALR 2d 674.

The legislature also enacted ORS 164.220, which reads as follows:

> "* * * Every unlawful entry of any building, booth, tent, railroad car, vessel, boat, or other structure or erection mentioned in ORS 164.240, with intent to steal or commit any felony therein, is a breaking and entering of the same within the meaning of ORS 164.240."

■ The only purpose of the enactment of ORS 164.220 then was to enlarge the scope of constructive breaking as known to the common law to include "[e]very unlawful entry."

This purpose was well stated by this court in an opinion by Mr. Justice ROBERT S. BEAN in *State v. Huntley,* 25 Or 349, 351, 35 P 1065, where he adopted the language of the Supreme Court of Wisconsin in construing a statute similar to ORS 164.220:

> " 'This section merely establishes a rule of evidence whereby the scope of constructive breaking is enlarged so as to take in *any unlawful entry of a dwelling-house or other building with intent to commit a felony.*' Nichols v. State, 68 Wis 416, 60 Am. Rep. 870, 32 N.W. 543." (Emphasis ours.)

The defendant contends, however, that since the booth was open to the public there could be no unlawful entry since the entry made was consented to. Defendant relies upon *Smith v. State,* Alaska, 1961, 362 P2d 1071, 93 ALR2d 525.

The case relied upon has no application to the issue here presented. The facts in the *Smith* case disclose that one Jack Sexton, an employee of the owner of an auto parts store, became intoxicated and wrote several checks. Later he was contacted by Anaruma (a co-defendant in the Smith case) who said he could get the checks back for Sexton if Sexton would arrange for Anaruma to enter the store so he could destroy certain records kept by the owner, Joe Columbus. Sexton then notified Columbus of the plan. The police were notified of the plan and arranged a stakeout. Anaruma called Smith and they were let into the building by Sexton, who had the owner Columbus's permission to open the building and let them enter for the purpose of entrapment.

Thus, the holding in the *Smith* case deals not one iota with the question posed in this case—of a trespass in violation of an implied consent to enter—for, as the court held, each defendant in the *Smith* case entered with the unlimited consent of the owner. The holding in *Smith* is in keeping with the decisions of other jurisdictions based on almost identical circumstances, *Allen v. The State,* 40 Ala 334, 91 Am Dec 477, *Spieden v. The State,* 3 Tex App 156, 30 Am Rep 126, where the courts held that an entry with unlimited permission of the owner "is not even a trespass."

The *Smith* case does give some comfort to the defendant as in a footnote in 93 ALR2d 530, it is stated:

"8. There is authority to the contrary. In Arkansas the burglary statute also required an unlawful entry, but the Supreme Court of that state has held that any entry, regardless of its character, is unlawful if accompanied by the necessary criminal intent. Pinson v. State, 1909, 91

Ark 434, 121 SW 751, 753. We disagree with that interpretation. It results in a nullification of the statutory requirement. See 51 Colum L Rev 1009, 1051 (1951)."

and on the basis of this observation it is stated in the opinion:

"The Alaska statute does not say or suggest that a simple entry is presumed to be unlawful if the requisite intent is present. The character or kind of entry is expressly qualified; it must be unlawful in itself, that is, trespassory, and without regard to the second element of the crime, the intent to steal. Under the plain language of the statute burglary sanctions cannot be imposed upon one who enters a building lawfully, i.e., by right or consent."

This observation of the Supreme Court of Alaska is wholly unnecessary to the opinion. However, the above language conveys the thought that an implied invitation to enter for lawful purposes is, in the law, equivalent to an unlimited invitation and is, therefore, not a trespass.

■■ It is well established that, while an unlimited consent, in the absence of fraud, threats, trick, artifice, or pretense, is a defense to a charge of burglary requiring a breaking, since there is no trespass, *Allen v. The State,* supra, *State v. Skillings,* 98 NH 203, 97 A2d 202, *Page v. State,* 170 Tenn 586, 98 SW2d 98, *Jones v. State,* 155 Tex Crim 481, 236 SW2d 805, *Spieden v. The State,* supra, *Davis v. Commonwealth,* 132 Va 521, 110 SE 356, it is equally well established that "a consent limited as to place, time, or purpose is not a defense where entry occurs outside the limitation stated or implied," and thus is trespassory. 93 ALR2d 534-537.

At this point, it would be well to analyze *Pinson v. State,* 91 Ark 434, 121 SW 751. That court in stating the facts said, p. 434-435:

> "There was testimony tending to prove that appellant in company with two others went into the saloon of Broyles after midnight * * * and that appellant called the bartender to the cigar stand and engaged him in conversation. In the meantime the other two parties who entered the saloon with appellant went behind the screen or partition where there was whiskey and stole same."

Also, the court stated "the evidence tended to prove that there was a conspiracy * * * to steal the whiskey," and "[t]here was evidence to warrant a finding that appellant intended when he entered the saloon to steal the whiskey."

These facts point out the distinction between an entry made under an implied invitation to transact business and an entry which is made in violation of the implied invitation of the owner. The court in *Pinson* points this out as follows, p. 439:

> "* * * As will be seen, our statute, while retaining the elements of common law burglary, has also greatly enlarged upon these, so that, under the statute supra, the unlawful entering, without breaking, of the house, etc., in the night time with the intent to commit a felony is burglary. The *unlawful entering,* in the sense of the statute, is going into the house, etc., with the intention formed in the mind at the time the entry is made to commit a felony. No one is invited or has permission to do any such thing as that. A saloon keeper even extends to the public no such invitation as that, and one who enters a saloon with the predetermined purpose to commit some felony therein, whether by day or night, goes there *in invitum,* and, were such purpose known to the owner beforehand, he could

prevent such person from entering his place of business." (Emphasis ours)

To the same effect: *Trevino v. State,* 158 Tex Crim 255, 254 SW2d 786.

Other jurisdictions, although not requiring an unlawful entry by statute to constitute a breaking as an element of the crime of burglary, consider a trespassory invasion of the property of another as an unlawful act.

In *State v. Bull,* 47 Ida 336, 276 P 528, 529, it is stated:

"An invitation to enter for a lawful purpose is not an invitation to enter for an unlawful purpose. In McCreary v. State, 25 Ariz. 1, 212 P. 336, the Supreme Court of Arizona, discussing this question, quoted from a decision of the Supreme Court of California in People v. Barry, 94 Cal. 481, 29 P. 1026, as follows: 'A party who enters with the intention to commit a felony enters without an invitation. He is not one of the public invited, nor is he entitled to enter. Such a party could be refused admission at the threshold, or ejected from the premises after the entry was accomplished.'

"In the later case of People v. Descheneau, 51 Cal. App. 437, 197 P. 126, it was said: 'One may, during business hours when a store is open to the public, enter therein with a view to purchasing goods, and if, after he enters, he concludes to steal, such act would constitute larceny only; but if when he entered he intended to commit larceny, his act under the statute of this state, constitutes burglary, even though the proprietor of the store, having knowledge of his purpose in entering, does nothing to prevent it.' This position was reiterated in People v. Brittain, 142 Cal. 8, 75 P. 314, 100 Am. St. Rep. 95; People v. Ferns, 27 Cal. App. 285, 149 P. 802. See also, Pinson v. State, 91 Ark. 434, 121 S.W. 751; State v. Mish, 36 Mont. 168, 92 P. 459,

122 Am. St. Rep. 343; State v. Stephens, 150 La. 944, 91 So. 349, 23 A.L.R. 286, and note."

■ Since the purpose of ORS 164.220 was to enlarge the common-law understanding of the element of constructive breaking in the crime of burglary to include "every unlawful" entry, we are of the opinion that when the evidence discloses facts from which a reasonable conclusion may be drawn that the entry was made not for the purpose of accepting the implied invitation to enter the structure but to steal or commit a felony, there has been a constructive breaking as intended by ORS 164.220.

■ Stated differently, the fact that a theft or a felony was committed in a structure, standing alone, is insufficient to establish an unlawful entry. There must be other evidence from which a reasonable conclusion may be drawn that at the time of the entry an intent had already been formed to commit the crime.

The facts of this case disclose that it was necessary to open a door to enter the telephone booth; that a peavy was used to separate the coin box from the telephone in the booth and the peavy used was found in the possession of the defendant. From this, reasonable minds could conclude that when the defendant opened the door and entered the telephone booth he had in his possession the peavy used and that the entry was made, not as a member of the public to use the structure as intended, but contrary thereto.

The defendant also contends that since ORS 164.635 provides:

"Any person who wilfully and wrongfully opens, removes or damages any coin telephone shall be punished upon conviction by imprisonment in the county jail for not more than one year or by a fine of not more than $500, or by both."

then to include a telephone booth in the class of structures included in ORS 164.240 and ORS 164.220 would be violative of the equal protection clause of the Constitution of the United States, relying upon *State v. Pirkey,* 203 Or 697, 281 P2d 698.

*State v. Pirkey,* supra, holds that where the specific acts prohibited by statute which constitute the crime may be prosecuted either as a misdemeanor or a felony and the determination of whether the offender is to be prosecuted as a felon or a misdemeanant is left to the indicting authority, such statutes violate equal protection.

In the matter before us, the specific acts prohibited under each statute are separable and state separate specific crimes. ORS 164.240.

■ To constitute the crime defined in ORS 164.240 and ORS 164.220, in addition to an unlawful entry, there must also be an intent to steal or commit a felony, while ORS 164.635 requires neither, but only an act of vandalism. *Black v. Gladden,* 237 Or 631, 393 P2d 190. There is no merit in this contention.

The defendant *pro se* assigns error in the admission of certain evidence which was found in his automobile prior to arrest, citing *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 6 L ed 2d 1081, 84 ALR2d 933, and *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L ed 2d 726.

■ A motion to suppress this evidence was filed and a hearing had in the trial court. The motion was denied on the basis of defendant's consent to the search of the automobile.

We have carefully examined the transcript in this regard and fully agree with the findings of the trial court.

The judgment is affirmed.

GOODWIN, J., dissenting.

The majority, by using a tort concept to define "unlawful" entry, makes virtually every crime committed indoors a burglary if the intent to commit the crime was formed before the offender entered the building.

I would limit "unlawful" as used in ORS 164.220 to wrongful means employed in gaining entry. Thus, if one were to gain entry to the building by fraud, or by putting a doorkeeper in fear, or by "stowing away" or by some similarly wrongful means, then the entry would be "unlawful" as I understand the intent of ORS 164.220. An abuse of an invitation, or an intent to use a public building for an illegal purpose, should not of itself make the offender a burglar, whatever else he might be.

I think the defect in the majority's construction of the statute is that it broadens the statute until it is virtually meaningless. We are making ORS 164.220 a catch-all to permit district attorneys at their election to prosecute, as burglars, all sorts of miscreants who commit their planned crimes indoors. Under the majority's reading of this statute, a person who enters a courthouse under subpoena, intending to commit perjury therein, would be a burglar. Other statutes adequately deal with such behavior, and with check-writers, shoplifters, embezzlers, etc.

I dissent.

McALLISTER, C. J., and SLOAN, J., concur in this dissent.