Argued and submitted February 25, affirmed April 27, petition for review denied June 28, 1994 (319 Or 274)

# STATE OF OREGON,
*Respondent,*

*v.*

# SHAWN LAVETTE WILLIAMS,
*Appellant.*

(C9111-35917; CA A76383)

873 P2d 471

David K. Allen, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Diane S. Lefkow, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R.

Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Defendant appeals his convictions for burglary in the first degree, ORS 164.225, and felony murder, ORS 163.115(1)(b). He also challenges the sentences imposed on his convictions for felony murder and attempted murder. We affirm.

On appeal from a conviction, we review the facts in the light most favorable to the state. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). On June 11, 1991, defendant was arrested for compelling prostitution, ORS 167.017, and promoting prostitution, ORS 167.012. The victim of both crimes was Amika Hall. She testified against defendant at the grand jury proceedings. The grand jury returned indictments against defendant on two counts each for promoting prostitution and compelling prostitution, and the matter was set for trial on August 14. Defendant told Hall that he would kill her or have her killed if she testified at the trial. When Hall arrived at the courthouse to testify on the date of the trial, she encountered defendant and his attorney at the top of a flight of stairs. As she walked past defendant, he gave her "a real evil look." An escorting officer ushered her to the other side of the hallway, onto an elevator and up to the courthouse lunchroom to await the beginning of the trial. Approximately one-half hour later, Hall and the officer learned that defendant had fled the courthouse and that the trial had been rescheduled for a later date. The officer then drove Hall back to her house. That night, while standing in an alley outside Hall's house, defendant fired several bullets through her dining room window. A 14-month-old infant asleep on the couch was hit by two bullets and died as a result of gunshot wounds to the head and chest. No one else in the house was injured.

Defendant was convicted of felony murder for causing the infant's death during the commission of the crime of first degree burglary. The burglary conviction was based on the theory that defendant unlawfully "entered" Hall's dwelling, with the intent to commit the crime of tampering with a witness therein,[1] when he fired bullets into the house. The trial court instructed the jury that an "entry"

---

[1] The crime of tampering with a witness is defined in ORS 162.285:

"(1) A person commits the crime of tampering with a witness if:

"is defined as any penetration of air space in a building, no matter how slight, by a person, by any part of [a person's] body, *or by any instrument or weapon being used or intended to be used in the commission of a crime*[.]" (Emphasis supplied.)

■   Defendant assigns error to that instruction and to the trial court's denial of his motion for judgments of acquittal on the felony murder and burglary charges. He argues that an "entry" can occur only if some part of the perpetrator's body encroaches into the dwelling. He points out that there is no evidence that any portion of his body intruded, even momentarily, into Hall's house.

First degree burglary is defined as "entering or remaining unlawfully" in a dwelling with the intent to commit a crime therein. ORS 164.215; ORS 164.225.[2] The statutory definition of the phrase "enters or remains unlawfully," in ORS 164.205(3),[3] does not provide any insight into whether an entry can be accomplished by an instrument. The state asserts that a bodily invasion is not necessary to satisfy the "entry" element of the offense of burglary. According to the state, a person completes a burglarious "entry" when an

―――――――――――

"(a)   The person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withold any testimony; or

"(b)   The person knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the person has been legally summoned.

"(2)   Tampering with witness is a Class C felony."

[2] ORS 164.225 provides, in relevant part:

"(1)   A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling[.]"

ORS 164.215 provides, in relevant part:

"(1)   A person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."

[3] ORS 164.205(3) provides:

" 'Enter or remain unlawfully' means:

"(a)   To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so; or

"(b)   To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge."

instrument penetrates the structure and is utilized by the person as a means of effectuating a criminal design.

The question presented by this appeal, then, is whether the legislature intended that the crime of burglary encompasses those situations in which a person, without making any physical intrusion, causes a bullet or other tangible object to intrude into another's structure with the intent that the object accomplish a criminal purpose. The issue is one of first impression in Oregon.

■ When interpreting a statute to divine legislative intent, we begin with the language of the statute. *State v. Person*, 316 Or 585, 590, 853 P2d 813 (1993); *State v. King*, 316 Or 437, 443, 852 P2d 190 (1993); *State v. Trenary*, 316 Or 172, 175, 850 P2d 356 (1993). We also consider the context of the statutory provision at issue. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Rules of construction that bear directly on how the text of the statute should be read and on the interpretation of the provision in context are considered at this stage in the analysis. *State v. Bea*, 318 Or 220, 225, 864 P2d 854 (1993). Some of those rules are derived from case law, *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611, such as the rule that a statutory term that had a fixed and definite meaning at common law is presumed to have been used in its common law sense. *State v. Keys*, 244 Or 606, 609-10, 419 P2d 943 (1966); *State v. Tauscher*, 227 Or 1, 10, 360 P2d 764 (1961). If the legislature's intent can be discerned from the statute's text and/or context, the court's inquiry is at an end. *PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611.

■ We return to the statutory provision at issue in this case. At common law, the term "enter," when used in reference to the crime of burglary, had an established meaning. Under the common law definition of burglary, no "entry" occurs when an instrument is used solely to facilitate a subsequent entry and not to achieve a criminal purpose inside the structure. 2 East, *Pleas of the Crown* 484, 490 (1803); 3 *Wharton's Criminal Law* § 333 (14th ed 1980 & Supp 1993); 2 LaFave & Scott, *Substantive Criminal Law* § 8.13 (1986 & Supp 1994). Thus,

> "there is no entry when a stick, being used by the defendant merely to break a window, happens to pass through the

opening; when, after breaking the glass of a door or window, he pokes a stick inside for the purpose of unlatching the door; when the defendant throws a boulder at a window, and it smashes the window and lands on the inside, it having been thrown merely for the purpose of making an opening; or when the defendant, while standing outside, fires a bullet which smashes the lock of a door and lands inside, the gun having been discharged merely for the purpose of breaking the lock." 3 *Wharton's Criminal Law, supra,* § 333.

However, an "entry" does occur when an instrument intrudes into the structure for the purpose of consummating a criminal intent. *See* 2 East, *Pleas of the Crown, supra,* at 490; 3 *Wharton's Criminal Law, supra,* § 333; 2 LaFave & Scott, *supra, Substantive Criminal Law* § 8.13. Thus,

"there is an entry when the defendant, after breaking a window, pokes a stick inside for the purpose of impaling and stealing a fur coat; when, after breaking a window, the defendant pushes the barrel of a gun through the opening for the purpose of shooting and killing the occupant; or *when the defendant, while standing outside, fires a bullet which pierces a window and lands inside, the gun having been discharged for the purpose of killing the occupant.*" 3 *Wharton's Criminal Law, supra,* § 333. (Emphasis supplied.)

Defendant has not cited, and we have been unable to locate, any source that remotely suggests a legislative intent to deviate from the common law meaning of the term "entry." We conclude that the term "entry," as used in the burglary statutes, is utilized in its common law sense. *See State v. Keys, supra,* 244 Or at 609-10; *State v. Tauscher, supra,* 227 Or at 10.

"Ordinarily, the term 'enter' in a statute defining and punishing burglary is to be given the same meaning as at common law, unless the statute shows a contrary intent." 12A CJS, "Burglary," § 22.

Therefore, an "entry" can be accomplished by even the slightest intrusion into a building by any part of a person's body, or by an instrument, if the instrument is used to enable the person introducing it to consummate a criminal objective.[4] *See Term. News Stand, Inc. v. General Cas. Co.,* 203 Or

---

[4] Defendant complains that this holding is unduly broad, because it allows a person to be prosecuted for burglary if that person criminally harasses occupants of a

54, 61, 278 P2d 158 (1954). The trial court so instructed the jury. Because defendant fired bullets into Hall's house for the immediate purpose of committing the offense of tampering with a witness, he thereby made an "entry" into the house under ORS 164.225. Accordingly, the trial court did not err in giving the challenged instruction or in denying defendant's motion for judgments of acquittal.

Defendant's remaining assignments of error pertaining to the sentences imposed for the felony murder and attempted murder convictions do not require discussion.

Affirmed.

---

house by shouting threats from the sidewalk, calling on the telephone or accessing a home computer. However, the question of whether an intangible medium such as sound waves or electronic impulses can accomplish an "entry" within the meaning of the burglary statutes is not before us at this time and is an issue on which we express no opinion.