STATE of Iowa, Appellee,

v.

James Schofield CAREY, Appellant.

No. 52942.

Supreme Court of Iowa.

Feb. 11, 1969.

Richard L. Pinegar and Norman G. Jesse, of Des Moines, for appellant.

Richard C. Turner, Atty. Gen., and William A. Claerhout, Asst. Atty. Gen., for appellee.

LeGRAND, Justice.

Defendant appeals from judgment following his conviction of the crime of aggravated burglary as defined in sections 708.1 and 708.2, Code of Iowa, 1966. We reverse and remand for a new trial.

The charge arose out of an incident in Harlan, Iowa, on the evening of October 29, 1966, when defendant is alleged to have invaded the home of Robert Musich armed with a dangerous weapon—a blackjack—with intent to commit an assault.

On the date in question Robert Musich was employed by Western Pork Company, where a strike was in progress by members of United Packinghouse Workers of America. Defendant, an employee of Oscar Mayer & Co. at Perry, Iowa, was a member of that union; Musich was not. During the strike Musich continued working and crossed the picket lines each day.

Although Musich is distantly related to defendant's wife, the two men did not know each other. Because of the relationship, however, several members of the striking union suggested defendant should talk to Musich about honoring the picket lines.

Defendant went to Musich's home at approximately 8:00 P.M. on the evening of October 29. Musich, his wife and two children were there. Defendant knocked on the screen door and, when Mr. Musich answered, asked permission to come in the house. Although the testimony is in dispute, the State's evidence shows no verbal consent to enter was given. There is evidence, however, that Mr. Musich opened the door and defendant thereupon entered. How wide it was opened and whether this was an implied invitation to enter are matters of bitter disagreement. They will be discussed later.

In any event defendant contends he had permission, either express or implied, to enter the house. He argues this is a complete defense to the charge of burglary, since that crime under the facts of this case requires proof of an illegal entry. Section 708.1, Code of Iowa, 1966.

Defendant assigns four errors for our consideration. The first deals with prejudice alleged to have resulted from the misconduct of the bailiff during trial; the second with misconduct of the county attorney in the cross-examination of defendant; the third with failure of the trial court to sustain defendant's motion for directed verdict on the ground of insufficiency of evidence; and the fourth with objections to Instructions #10 and 14 relating to the issue of consent in defining the elements of breaking and entering.

I. Defendant first alleges misconduct on the part of the bailiff who was in charge of the jury. He claims this misconduct was sufficiently prejudicial to justify a new trial.

Trial of this case began on March 13, 1967, and on that day coffee was furnished in the jury room without charge. As far as the record shows the source of this gratuity was not then apparent to the jury.

The following morning when defendant's counsel arrived at the courthouse he noticed a coffee service set up in the jury room with a typewritten sign as follows:

"Coffee will be furnished in the jury room by the county clerk and the county attorney."

He immediately asked for a mistrial, which was overruled after a hearing at which the bailiff testified concerning the circumstances surrounding this incident.

From this testimony it appears that the bailiff had purchased the coffee, although the county attorney apparently intended to reimburse her for it; that it was available for all in the courthouse who cared to enjoy it; and that the sign to which defendant objected was placed there without the consent or knowledge of the county attorney.

The trial court found the practice to be objectionable but denied a mistrial,

presumably because it was improbable that prejudice had resulted therefrom. We have consistently held misconduct with respect to the jury, whether it be by litigant, counsel or officer of the court, will not be grounds for a new trial unless prejudice is shown. 24B C.J.S. Criminal Law § 1926a, page 237; State v. Poffenbarger, 247 Iowa 552, 556, 557, 74 N.W.2d 585, 587, 588, and citations; State v. Faught, 254 Iowa 1124, 1133, 1134, 120 N.W.2d 426, 431, 432.

■ We are, however, confronted with another equally well-established rule in considering this error—that the jury is to be above suspicion and that any practice which brings its proceedings under suspicion is to be prohibited. While we absolve the county attorney of any misconduct in this regard since he was unaware of what happened, the result unfortunately is nevertheless the same. As far as the jury was concerned, coffee *was* furnished with the compliments of the prosecutor for the State.

No one contends any juror here was corrupted for the price of a cup of coffee, but we along with all courts have zealously guarded the utter independence of jurors. For that reason we have criticized the conduct of a sheriff and his deputies, who were also witnesses in the case, who transported the jury to a restaurant where they ate together, State v. Faught, supra; a county attorney who gave jurors transportation during the trial, State v. Neville, 227 Iowa 329, 331, 288 N.W. 83, 84; an important witness who rode to the courthouse with a juror, Chicago Joint Stock Land Bank v. Eggers, 214 Iowa 710, 711, 243 N.W. 193; a defendant who drove a juror to the poor farm during a recess and invited him to dine with him, Lynch v. Kleindolph, 204 Iowa 762, 764, 216 N.W. 2, 3, 55 A.L.R. 745.

In Stafford v. City of Oskaloosa, 57 Iowa 748, 752, 11 N.W. 668, 670, a motion for new trial was sustained because of alleged misconduct of a juror who visited with one of the attorneys during the trial and spent the night with the attorney and his family, although it was shown the case was not discussed. There we said, "We discover no evidence authorizing the conclusion that either the juror or the attorney intended any wrong. The good character and high respectability of neither are questioned.

"We are united in the opinion that the verdict ought not to stand, in view of the transactions and associations between the attorney and juror while the trial was pending. It would be extremely unsafe, for the pure and correct administration of the law, through trial by jury, to permit such transactions. * * *

"To sanction the transaction in question would bring disgrace upon the administration of the law. There is absolute safety in the rule we adopt; there is danger in a different one."

In Lynch v. Kleindolph, supra, at page 764 of the Iowa Reports, 216 N.W. at page 3 we said, "The question involved herein [a social engagement between defendant and one of the jurors] is of a more serious character than would appear at first blush. There is probably no more interesting or fascinating question involved in the history of courts than the origin and development of the jury system. It is one of the most vital elements of our system of government. So far as the average citizen is concerned, he is less in touch with the executive and legislative department. When he is confronted with private or public differences, he naturally turns to the courts for relief. His faith in the courts must be encouraged. When the time comes that our people lose faith in the courts, our form of government is fast nearing its end. * * * *That faith can only be sustained by keeping our judicial proceedings not only free from wrong, but free from all suspicion of wrong.* In other words, all our court proceedings should be like Caesar's wife—'above suspicion'." (Emphasis added.)

Recently we had occasion to consider this question again in a civil case where

it was claimed prejudicial error resulted because the trial judge called the foreman of the jury into his chambers and there carried on a conversation with him privately during the jury deliberations. We held this required a new trial. Daniels v. Bloomquist, 258 Iowa 301, 306, 138 N.W.2d 868, 872. We said there, "In order that the institution of jury trials be preserved and its usefulness continued, its deliberations and pronouncements must be kept pure, and untainted, not only from all improper influences, *but from the appearance thereof*. It is often said that the jury trial is one of the bulwarks of our liberty, but it will remain so only as long as public confidence in the institution prevails. * * *

"Whether or not injury or injustice have resulted to the litigants by reason of the conduct, is not our primary concern. Rather, our concern is with the implication that attaches to the administration of justice under these circumstances. Confidence in our judicial system is imperiled if such conduct is countenanced in jury trials. Conduct which if proved would give rise to doubt and disrespect, or the mere appearance of such conduct as will not meet with the approval of public opinion, must be severely condemned. * * * " (Emphasis added.)

We reiterate those sentiments here. Our anxiety to protect the jury from any conduct which would lessen public confidence in our judicial system should be even greater in a criminal trial.

All blandishments, or apparent blandishments, all attempts to ingratiate one side or the other with the jury must be prevented. The fact that today it was only a cup of coffee is immaterial, for tomorrow something of perhaps greater value might be tendered. Likewise the fact that the conduct here was innocent is immaterial. The effect upon the jury and upon any member of the public who might become familiar with it was the same as if it had been an intentional attempt to secure favor with those persons who were even then in the process of passing upon the guilt or innocence of a man accused of a serious crime.

Certainly we would not permit the *defendant* to furnish any honorarium to the jury, no matter how insignificant, while it was sitting on a case in which his fate was at stake. We can be no less critical because it was the State, rather than the defendant, who did so; or, perhaps more accurately, gave the appearance of doing so.

In view of our holdings in Division II and Division III hereof, we do not base our conclusion that defendant is entitled to a new trial entirely upon what we have already said. Nor need we decide whether this alone, without more, would be sufficient to require a new trial. It is, however, a practice fraught with danger, one that is calculated to bring the administration of justice into disrepute, and one which all courts should zealously guard against.

II. Defendant next claims prejudicial error resulted from the State's cross-examination of defendant concerning one Karen Pollock. We believe much of this cross-examination was improper, as did the trial court since a motion to withdraw it from the consideration of the jury was sustained. The question now arises whether this was sufficient to remove any prejudice from the admission of such evidence, or whether it falls within the rule of those exceptional cases which hold the prejudice is so pronounced that a mere withdrawal of it will not cure the error.

It is well settled that a defendant who takes the stand in his own behalf submits himself to the same tests on memory and credibility, subject to the restrictions of section 781.13, Code of Iowa, as any other witness. It is also well settled that the trial court has considerable discretion concerning the extent and scope of cross-examination. State v. Haffa, 246 Iowa 1275, 1283, 71 N.W.2d 35, 40; State v. Frese, 256 Iowa 289, 292, 127 N.W.2d 83,

85, and citations; State v. Van Voltenburg, 260 Iowa 200, 147 N.W.2d 869, 873, 874.

In the present case the county attorney had information which he conceded was hearsay to the effect that on the day of the alleged crime defendant, in a conversation with Karen Pollock, had said he "was going to Harlan and hit somebody on the head."

Evidence of such statement was of more than passing importance because it would tend to directly establish the specific intent which is an essential element of the crime with which defendant was charged. Objection to the question was overruled and defendant answered negatively. Assuming arguendo that this question was a proper one, what followed thereafter certainly went beyond the scope of proper cross-examination.

By a series of questions the State attempted to show that Karen Pollock was unavailable as a witness and that defendant was somehow responsible for her absence. We need not speculate that this was the State's motive; the county attorney announced that it was in chambers during discussion on this very question. The county attorney stated he had no *admissible* evidence of any statement made by defendant to Karen Pollock; that Karen Pollock would not be called as a witness because she was unavailable; that his purpose in questioning defendant was to determine "where Karen Pollock is and whether or not there are any facts from which the jury could infer how she had been encouraged to become unavailable." Then this occurred:

"The Court: Do you have any information, investigative information, that someone has talked to this witness [Karen Pollock]?

"Mr. Larson: Yes, but it is hearsay.

"The Court: And if someone told you these things, I don't think any of this would be admissible in the trial of this case. If you have some proof, and I think it is up to the State to do its own investigating that there has been suborna-tion of prejury or interference with justice, this is a separate case. I don't think it is proper here to go into an investigative technique to locate a witness.

"Mr. Larson: But I know I am going to be faced with a situation here on rebuttal, the possibility of rebuttal on several statements made by him in direct examination and no witness to go on. This in effect it seems to me that they are allowed to take advantage of a situation where there is no tie-up between this Pollock woman, her disappearance, and the defendant, and I would like to have that known, if there is anything that can be drawn from it, any inferences, that is a proper question to inquire into.

The Court: At the present time the court feels that that would be prejudicial if that is what you are trying to inject in the case. That this defendant without further proof on the State might have had something to do to make this witness unavailable, unless the State has some actual proof of that, and I don't think you can prove it."

The court then directed that further questioning along this line be abandoned.

Later that afternoon defendant's counsel moved that all cross-examination concerning Karen Pollock be stricken and that the jury be admonished not to consider it.

Despite the proceedings in chambers, which have been heretofore described, and despite the county attorney's admission that he had no evidence to introduce concerning Karen Pollock or any statement claimed to have been made to her, and although the county attorney had already conceded he could not produce Karen Pollock as a witness, he nevertheless made this statement:

"Your Honor, may I request that ruling be reserved and allow us enough time to find this woman?"

Once more the obvious purpose was to create the impression, without any support, that defendant was responsible for Karen Pollock's absence.

We cannot approve the conduct of the county attorney in his cross-examination of defendant. His avowed purpose was to put before the jury by insinuation and innuendo highly damaging facts which he admittedly had no way of properly presenting to them. Indeed if he could persuade the jury that defendant was responsible for Karen Pollock's failure to appear as a witness, it is inevitable that such conclusion would weigh heavily against defendant in the jury's deliberation as to his guilt or innocence.

■ This is exactly what the county attorney hoped to accomplish, and he may well have done so, even though the court withdrew the evidence from consideration of the jury. Ordinarily such withdrawal cures any error. State v. Olson, 249 Iowa 536, 554, 86 N.W.2d 214, 225; State v. Bolds, 244 Iowa 278, 281, 55 N.W.2d 534, 535; State v. Warren, 242 Iowa 1176, 1183, 47 N.W.2d 221, 225.

■ Misconduct on the part of the county attorney alone is not reversible error unless it is such as to have deprived defendant of a fair trial. State v. Haffa, supra; State v. Barton, 258 Iowa 924, 934, 140 N.W.2d 886, 891, and citations; State v. Mercer, 261 Iowa 371, 154 N.W.2d 140, 142, and citations.

■ However, we have held in a number of cases that the mere withdrawal of evidence does not always remove its prejudicial effect. In State v. Brundidge, 118 Iowa 92, 91 N.W. 920, 921, we said, "It is true, also, as contended by the state, we have recognized the rule that, where incompetent evidence has been received, its subsequent withdrawal or exclusion by the trial court will ordinarily cure the error. It is, however, a rule which may easily be abused,—especially in the trial of a criminal case—* * *." In State v. Pad-

en, 199 Iowa 383, 384, 202 N.W. 105, 107, we held some evidence may be so "toxic" in character as to poison the minds of the jury beyond any hope of removing prejudice by a later withdrawal of the evidence. In the more recent case of State v. Tharp, 258 Iowa 224, 234, 138 N.W.2d 78, 83, we held a damaging answer to a hypothetical question which assumed certain facts not in evidence could not be cured by a later instruction to disregard the question and answer if the jury found the hypothesis upon which it was based not established by the evidence. We held there the damage could not be undone simply by an instruction to disregard. Although this differs from a situation when testimony is withdrawn shortly after its admission and the jury is then directed to disregard it, it does bear upon the subject under discussion.

■ While there may be some difference of opinion about the effect of this cross-examination, it must be conceded it went beyond the bounds of proper cross-examination. It had no relevance to his direct examination, nor was it in any way directed toward testing his memory, history, motives or matters affecting his credibility. It was simply to suggest to the jury that defendant was somehow responsible for the failure of one of the State's important witnesses to appear before them. We have previously said this does not meet the standard of proper legal procedure to which a defendant is entitled. State v. Tolson, 248 Iowa 733, 735, 82 N.W.2d 105, 106, and citations; State v. Moon, 167 Iowa 26, 35, 148 N.W. 1001, 1005.

The real objection to this tactic was stated in State v. Haney, 219 Minn. 518, 18 N.W.2d 315, 317, as follows, "The State is not permitted by means of the insinuation or innuendo of incompetent and improper questions to plant in the minds of the jurors a prejudicial belief in the existence of evidence which is otherwise not admissible and thereby prevent the defendant from having a fair trial." In

State v. Bass, 93 N.H. 172, 37 A.2d 7, the New Hampshire Supreme Court said, " * * * An attorney should not suggest in his questions facts that may be prejudicial unless there is or will be evidence of such facts."

We have held to like effect in State v. Poston, 199 Iowa 1073, 1075, 203 N.W. 257, 258. We have recently criticized the practice of prosecuting attorneys who persist in asking improper questions and who needlessly flirt with reversible error. While not precisely in point, the discussion in State v. Gill, 259 Iowa 142, 146, 143 N.W.2d 331, 333, is of interest here.

We repeat what we said at the conclusion to Division I of this opinion. Perhaps the erroneous and prejudicial cross-examination of defendant, in view of the fact that it was promptly withdrawn from the consideration of the jury, would not of itself require a new trial, but nevertheless it is one of the considerations which have convinced us that the case must be reversed. We refer to this again later.

III. We now consider the last two assignments of error dealing with the sufficiency of the evidence and the instructions relating to the issue of consent. Defendant argued these as a single assignment and we treat them in the same manner here.

In considering the sufficiency of the evidence we must consider the testimony in the light most favorable to the State. State v. Wesson, 260 Iowa 331, 149 N.W.2d 190, 192 and citations; State v. Stodola, 257 Iowa 863, 865, 134 N.W.2d 920, 921; State v. Harless, 249 Iowa 530, 532, 86 N.W.2d 210, 211. Defendant's argument is directed toward the circumstances under which he gained entry to the house. He asserts there is no evidence from which the jury could find a breaking and entering.

We cannot agree with defendant. There is considerable evidence from which the jury could find defendant wrongfully opened the screen door and illegally entered the house. The testimony of Mr. Musich warrants that conclusion. Under our previous decisions this would be enough to constitute a breaking and entering. State v. Sorenson, 157 Iowa 534, 542, 138 N.W. 411, 413; State v. Murray, 222 Iowa 925, 931, 270 N.W. 355, 358. We also hold there was sufficient evidence to permit the jury to pass on defendant's intent to commit an assault at the time in question.

This, however, does not fully dispose of defendant's argument. While there was evidence from which the jury could find against defendant on the issues just mentioned, there was evidence, too, which would have justified a contrary result on the vital matter involving consent to enter the house where the offense occurred.

This was the theory of the defense and we find the instructions did not properly submit the issue to the jury.

In considering this point it must be kept in mind the circumstances under which entry was effected were extremely unusual. This was not an entry by one of the usual acts of stealth or force nor was it accomplished upon a darkened or unoccupied house. Here defendant went to the front door of a lighted home which he knew was occupied. He claims his way was barred only by a combination storm and screen door which was closed. He knocked on the door. He talked with Mr. Musich. He asked permission to enter.

This much is virtually undisputed. A difference of opinion arises, however, as to what happened thereafter. Defendant claims Mr. Musich told him to come in and opened the screen door to permit his entry. Mr. Musich denies this, although admitting he did not verbally refuse defendant's request. Mrs. Musich, although only a few feet away, gave no version at all concerning this part of the controversy. There is also evidence concerning contradictory statements made by Mr. Musich following the event, both to the sheriff and in his testimony before the Grand Jury.

The dispute as to whether Mr. Musich opened the door, and if so how wide, and whether defendant could reasonably believe he had permission to enter are the crucial points of this case. We believe the defendant had a right to have this issue submitted to the jury by an instruction which fully explained his theory. We do not believe Instruction 10 did so. It provided as follows:

" * * * you are instructed that the breaking and entering within the meaning of the offense as described in Instructions #7 and 8 are that the entering without breaking of the offense referred to in Instruction #9 must be against the consent of the occupant."

That is the only reference to consent in the entire instructions. It did not properly present the issue to the jury under the particular facts of this case. Here there was not only evidence of verbal consent, which was in turn denied, but even more important was the evidence concerning the opening of the door as an implied invitation to enter. It cannot be denied that consent may be manifested by conduct as well as by words. The jury could well have found under this record that Mr. Musich's actions amounted to consent for defendant to enter the house. The conflicting statements on this issue made it all the more important that it be explained. Without such explanation, the jury could not know consent need not be given in express terms nor, in any event, what conduct would amount to consent or would justify defendant in a bona fide belief it had been given. 12 C.J.S. Burglary § 12, pages 675, 676; State v. Abley, 109 Iowa 61, 64, 80 N.W. 225, 46 L.R.A. 862; Annotation, 93 A.L.R.2d 531, 555; State v. Keys, 244 Or. 606, 419 P.2d 943, 946; Smith v. State, Alaska, 362 P.2d 1071, 1073, 93 A.L.R.2d 525, 528.

Defendant seeks to rely upon the trial court's failure to properly instruct on the issue of consent as one of his grounds for a new trial. The question arises whether this matter has been properly preserved for this appeal.

Our rules of civil procedure do not apply to criminal matters, but section 780.35, Code of Iowa, 1966, provides rules relating to instruction of juries in civil cases shall apply as well to criminal prosecutions. Section 787.3(5), 1966, Code of Iowa, also makes error in instructing on a material point of law a ground for new trial.

A defendant in a criminal trial may reserve his objections to the instructions until making his motion for new trial after conviction and before judgment. We have frequently held, however, that when the trial court does instruct on a certain issue upon which defendant desires a more specific or additional instruction he must make request therefor as provided in rule 196, Rules of Civil Procedure. State v. Jensen, 245 Iowa 1363, 1371, 66 N.W.2d 480, 484; State v. Horrell, 260 Iowa 945, 151 N.W.2d 526, 532. Defendant did request an additional instruction on consent, but it did not specifically raise the question he now argues before us.

The question of instructions got considerable attention from court and counsel during the preliminary stages of their preparation. The record shows an "informal" discussion concerning the proposed instructions, during which both defendant's counsel and the trial court referred to defendant's right to first assert his objections in a motion for new trial. The record further shows these comments during that discussion:

"The defendant informally calls to the attention of the court that the entire set of proposed instructions fails to state in its definition of breaking and entering that the same must be without consent, express or implied, that all openings of doors are not breaking, if there is consent, and there is evidence in this case of consent, express or implied. Also that the court nowhere tells the jury that the breaking must be without the knowledge of the occupant, nor does the court anywhere in the in-

structions tell the jury that the entry must be without the consent and without the knowledge of the occupant * * *"

And later:

"Your definition of breaking and entering, Your Honor, as set forth in your Instruction 13 [Instruction 14 of final draft] I have already referred to, and I draw your attention to it as lacking any statement concerning consent or knowledge and consent can either be express or implied. Because under this instruction as it now reads, * * * if he were invited into the house, if the jury followed your instruction and said that the offense of burglary consists of entering or gaining access to a dwelling by opening a closed door * * * they could find even though it. was opened in such a manner as to be an implied invitation, that if they opened any more and came in and accepted the invitation [he] would still be guilty of burglary * * *"

When it came to making a formal request, however, defendant asked only this:

" * * * You are instructed that a breaking and entering, within the meaning of that offense as charged in the information, consists of entering or gaining access to a dwelling by opening a door or window or by removing or breaking a part of such dwelling or other obstacles or impediments that interfere with the entering or access to said dwelling, and the same must be without the knowledge or consent of the occupant or occupants thereof.

"So in this case if you find * * * said dwelling * * * was broken into * * * without the knowledge or consent of the occupant * * * said act or acts would constitute a breaking and entering * * *"

Defendant's complaint on this appeal is that the instruction as given did not afford the jury any guidelines or directions as to implied consent, consent resulting from conduct rather than verbal consent. Neither did his requested one. Neverthe-

less the request served to alert the trial court to the entire question of consent.

The informal discussion heretofore mentioned and the objections there urged cannot serve as grounds for defendant's appeal. State v. Schmidt, 259 Iowa 972, 980, 145 N.W.2d 631, 636, and citations. However, we cannot entirely disregard them when considering the instruction given by the court. It is apparent the trial court understood the basis for defendant's dissatisfaction with the instruction on consent. The issue of implied consent and consent by conduct was pointed out several times. It is quite true defendant, in the discussion about instructions, in the requested instruction, and in the motion for new trial, persistently confused the question of Mr. Musich's knowledge of the entry with the elements of implied consent. The question of knowledge is of no importance under these circumstances and it would have been improper to include that element in an instruction, but that does not mean defendant is thereby deprived of his right to have a proper instruction on consent. His request for a wrong one does not excuse the failure to give a right one.

We have already mentioned the theory concerning implied consent was vital to defendant's case. While evidence of an assault of some kind was extremely strong, evidence as to burglary under the bizarre circumstances existing here was at best tenuous. The entire matter turned upon whether Mr. Musich, either by his words or conduct, invited defendant to enter, or whether defendant was entitled to believe he had done so. This was determinative of the whole case as far as burglary was concerned. Yet the jury was given no yardstick by which to determine that important and disputed fact. 23A C.J.S. Criminal Law § 1324, page 829 and § 1325(4), page 837; Sanford v. Nesbit, 234 Iowa 14, 18, 11 N.W.2d 695, 698; State v. Wilson, 234 Iowa 60, 85, 11 N.W.2d 737, 750; State v. Cox, 240 Iowa 248, 254, 34 N.W.2d 616, 620; State v. Rowe, 238 Iowa 237, 246, 26 N.W.2d 422, 427; State

v. Manning, 149 Iowa 205, 210, 128 N.W. 345, 347.

In State v. Jensen, 245 Iowa 1363, 1371, 66 N.W.2d 480, 484, we said, "If he [defendant] wishes the jury to be instructed upon a certain point, it is his duty to advise the court. *There are certain situations when a matter is so important in the case or so much an integral part of it that it is the duty of the court to instruct upon it without request. But generally this is not so.* * * *" (Emphasis added.)

We believe that is the situation here. We hold defendant's guilt or innocence of burglary could not be properly determined under this evidence without full and complete instructions explaining the issue of consent, both express and implied.

We hold the matter here under discussion was so vital to the defendant it was the trial court's obligation to give a full and complete instruction on the issue of consent.

■ IV. We find some merit in each of defendant's assigned errors. Perhaps none alone is sufficient to require a new trial but upon a careful consideration of the whole record, we are convinced the cumulative effect has been to deprive defendant of a fair trial. Under such circumstances, we are obliged under section 793.18, Code of Iowa, to give him a new one.

This authority is not to be invoked lightly. It should be resorted to only when, as here, defendant would otherwise be denied his right to a fair trial. As bearing on this subject see State v. Anderson, 240 Iowa 1090, 1098, 38 N.W.2d 662, 666; State v. Mabbitt, 257 Iowa 1063, 1066, 135 N.W.2d 525, 528; State v. Leahy, 243 Iowa 959, 969, 54 N.W.2d 447, 453; State v. McElhaney, 261 Iowa 199, 153 N.W.2d 715, 717; State v. Post, 255 Iowa 573, 578, 579, 123 N.W.2d 11, 14, 15; State v. Cusick, 248 Iowa 1168, 1170, 84 N.W.2d 554, 555.

For the reasons stated herein this cause is reversed and remanded for re-trial.

Reversed and remanded.

MOORE, RAWLINGS, and BECKER, JJ., concur.

MASON, J., concurs in Divisions I and II and in the result, but dissents from Division III.

GARFIELD, C. J., and LARSON, SNELL and STUART, JJ., dissent.

MASON, Justice (concurring in part and dissenting in part).

I concur in the result reached by the majority reversing this case but would do so on the basis of errors considered in Divisions I and II of the majority opinion. I would hold either of these assigned errors or in combination were prejudicial and required reversal.

However, I would hold defendant failed to properly preserve his asserted error as to instruction 10. The error, if any, in the giving of this instruction was invited and for this reason I join in that part of Division III of the dissent commencing with the second complete paragraph in column 2 on page 49 which starts: "We have held many times * * *" ending with the statement near the middle of column 2, page 53: "It was not for 'an additional instruction', as the majority insists on asserting."

GARFIELD, Chief Justice (dissenting).

I am convinced the trial court's judgment is right and should be affirmed.

No one questions that an accused is entitled to a fair trial. I think this defendant was accorded such a trial.

It should not be lost sight of, however there are two parties to a criminal case and that the State as well as the defense is entitled to a fair trial. We have fre-

quently pointed this out. State v. Haffa, 246 Iowa 1275, 1283, 71 N.W.2d 35, 40, cert. den. 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801; State v. Case, 247 Iowa 1019, 1030, 75 N.W.2d 233, 240; State v. Kelly, 249 Iowa 1219, 1222, 91 N.W.2d 562, 564; State v. Barton, 258 Iowa 924, 931–932, 140 N.W.2d 886, 891. To like effect is 21 Am.Jur.2d, Crim.Law, section 234. See also State v. Dwinells, 259 Iowa 945, 950, 146 N.W.2d 231, 235; 23 C.J.S. Criminal Law § 961, page 839.

Also, a fair trial does not necessarily mean an absolutely perfect one. State v. Haffa, State v. Case, State v. Barton, all supra; State v. Hess, 256 Iowa 794, 800, 129 N.W.2d 81, 84; State v. Mercer, 261 Iowa 371, 154 N.W.2d 140, 142.

The late respected Mr. Justice Cardozo declared: "Justice though due the accused, is due the accuser also. * * * We must keep the balance true." The majority's consideration of the appeal is weighted in defendant's favor. In the main, the opinion refers to matters thought to be favorable to him while ignoring or minimizing matters of fact and law favorable to the state.

I. It should be pointed out the crime was committed in Harlan, Shelby county, where the indictment was returned. Defendant moved for change of venue on the ground he could not receive a fair trial in Shelby county or the eight other counties in the same judicial district. The motion was sustained and the trial was transferred to Guthrie county which does not adjoin Shelby and is in another district.

Except that the Guthrie county attorney sat at the counsel table with the Shelby county attorney for the sole purpose of helping him select the jury, without employment by or pay from Shelby county, the former took no part in the trial and the small part he did take terminated with the selection of the jury at 3:45 March 13. Court then adjourned until 9:00 a. m. the following day. The majority states the trial began March 13. A more accurate

statement is the jury was then selected but taking of evidence commenced the following day, after defendant's motion for mistrial—one of five he made—was made and overruled.

The majority's assertion, "As far as the jury was concerned, coffee *was* furnished (the jury) with the compliments of the prosecutor for the State" is inaccurate and unfair. The prosecutor was the Shelby county attorney. No one claims he had any part in furnishing coffee to the jury, that any juror was so informed in any manner or so understood. So far as shown, no juror was told who, including the Guthrie county attorney, furnished the coffee the day the jury was empaneled.

Defendant's motion for mistrial was dictated into the record at 9:05 a. m. March 14 on the ground the Guthrie county attorney had been supplying coffee for the jurors and the lady jury bailiff had so advised the jurors. Mr. Greenfield, the alleged offender, immediately denied coffee had been supplied to any juror with his knowledge. Defendant's counsel then asked and was permitted to examine the bailiff under oath as his witness.

She testified she bought and paid for the coffee; someone left sixty cents in a little pan near the coffee the previous day which more than paid for what was consumed; she made coffee the morning she was being examined and left a little note there which said: "Coffee will be furnished in the jury room by the County Clerk and the County Attorney"; she said nothing to Mr. Greenfield about the coffee or the note and he had nothing to do with the matter; the witness had done this for several years and the money left in the little pan paid for her coffee.

The witness then gave this important testimony: "I don't know what time this morning I placed the note there. *Around 9 I suppose.* I don't know. No, I do not know of my own knowledge whether any jurors saw that note this morning. *I rather doubt it because they came in, hung up*

*their coats and went right out again.* I was talking to the custodian and the jurors didn't hestitate at all, and I doubt very much if they saw it." (emphasis added)

No objection or motion to strike was made to any of this testimony. The bailiff also testified the note was not in the jury room the previous day.

On the record above summarized the trial court overruled defendant's motion for mistrial and later his motion for new trial based in part on alleged error in the first ruling. After other motions were made and ruled upon, introduction of the state's evidence before the jury began at 9:30. It is not necessary to presume the motions were overruled because the trial court found it was improbable prejudice resulted from the coffee incident. The court declared he did not feel what was done was prejudicial or improper to the extent it would justify granting a new trial. He also observed, in denying a new trial, that on several occasions during the trial defendant's counsel showed undue solicitude for the jury's comfort by suggesting they had been sitting quite a while and it was probably time for a recess.

The number one error defendant assigns and argues is the overruling of his motion for mistrial and the same ground of his motion for new trial. I would hold it has not been shown either ruling was an abuse of the considerable discretion vested in trial courts in passing on claims of misconduct of a court official or counsel. This is a matter that is fundamental in resolving such claims, yet the majority completely ignores it in both its Divisions I and II.

It should first be pointed out that the main basis for defendant's complaint is the placing of the typewritten note near the coffee on the morning of March 14. Defendant concedes "the county attorney" the note referred to was the Guthrie county attorney. As stated, his limited part in the trial ended the previous afternoon. The bailiff testified she supposed she placed the note there around 9 that morning when court was to convene; she doubted any jurors saw it since they hung up their coats and left the room.

There is no evidence to the contrary. *There is no evidence any trial juror saw the note or stopped to read it.* It is probable none did. *There is no testimony any of them drank any of the coffee.* It was in the jury room that morning only minutes before the motion for mistrial was made and soon overruled. The majority's finding (in its Division IV) there is "some merit" in this assigned error is not supported by facts in the record but rests largely on speculation and conjecture.

The majority concedes we have consistently held misconduct with respect to the jury is not a ground for new trial unless prejudice is shown. I don't understand it holds such a showing was made here. Certainly there is no reasonable basis for such a holding, at least if the trial court, in accordance with our repeated decisions, is accorded discretion in passing on a claim of misconduct.

State v. Poffenberger, 247 Iowa 552, 556, 74 N.W.2d 585, 587, cited by the majority, lists many Iowa precedents and other authorities in support of this: "However, we do not reverse a conviction because of misconduct of the bailiff unless it probably influenced or prejudiced the jury against the defendant *in the rendition of its verdict.* And the trial court has at least some discretion in passing on a claim of misconduct such as this. Unless an abuse of discretion appears we will not ordinarily disturb its ruling on a motion for new trial based on such a ground." (emphasis added)

To like effect is State v. Faught, 254 Iowa 1124, 1133–1134, 120 N.W.2d 426, 431–432, (also cited by the majority) citing the Poffenberger opinion.

A note in 10 Drake Law Rev. 126, 129–130, entitled "Misconduct of Jury Members in Iowa" cites many decisions for this:

"Whatever the form of the misconduct may be, one general rule nearly always applies in these cases, i. e., to justify granting a new trial because of misconduct of jurors, it must appear to be reasonably probable that the misconduct influenced the verdict. A new trial will not be granted for misconduct unless the rights of the complaining party were materially affected. Unless this element appears, no new trial will be granted, regardless of how reprehensible the conduct may be."

I have more faith in juries than to believe this one was probably influenced or prejudiced against defendant in the rendition of its verdict by anything it is shown this lady bailiff did regarding coffee, and I don't understand the majority thinks any such influence or prejudice was shown either. As stated, the trial court found no such prejudice as would justify a new trial.

Jacobsen v. Gamber, 249 Iowa 99, 101–102, 86 N.W.2d 147, 149 reverses the grant of a new trial by an experienced trial judge who thought the bailiff guilty of misconduct for unduly hastening the jury in reaching its verdict. This from the opinion may be repeated here: "It is apparent the question before us at this point is whether the court was within its fair discretion in granting a new trial for the reasons stated. * * * It is thoroughly settled that the trial court has a large discretion in granting motions for new trial. But this is not unlimited. It is a legal discretion, and can be exercised only for sound judicial reasons. (citations) We have not hesitated to reverse grants of new trials when the trial court's order was not founded upon sound principles and reasoning. *The discretion exercised must be based upon the record.* (citation) Verdicts should not be set aside lightly; the court, in proclaiming the basis for the grant of a new trial, must be sure that it shows a sufficient ground to support its exercise of discretion. A litigant is, as we have said, entitled to a fair trial, but to only one fair trial. (citations)" (emphasis added)

We have repeatedly pointed out the trial court is in better position than we are to rule advisedly on a motion for new trial based on such a ground as misconduct of a court official or counsel. Yet, as pointed out in Jacobsen, the grant of a new trial even by the former must be based upon the record. Mere suspicion and such extravagant misstatements of the record as that the State here furnished the jury an "honorarium" are not enough. Jacobsen v. Gamber is followed on this point in Estate of Springer, 252 Iowa 1220, 1236, 110 N.W.2d 380, 390, and Lubin v. Iowa City, 257 Iowa 383, 385, 131 N.W.2d 765, 767.

The majority attempts to defend its holding in Division I as to defendant's first assigned error by professing fear that if this verdict stands, the independence of jurors will not be zealously guarded, the faith of the average citizen in the courts will be shaken and the verdict here will be imbued with suspicion of wrong.

It is my view the majority's decision will come closer to bringing about such results as the majority professes to fear than would come from an affirmance of this verdict, supported as it is by ample evidence of guilt. See United States v. 72.71 acres, etc., D.C.Md., 157 F.Supp. 401, 404. The precedents the majority cites and quotes from in its Division I are a far cry from the present case. A brief review of them demonstrates they bear no fair analogy to it.

In State v. Faught, supra, the sheriff and two of his deputies transported the jury from their jury room, during their deliberations, to and from a restaurant where they all ate and visited together. The sheriff and one of the deputies were key witnesses for the state and the former was in charge of the investigation of the homicide. None of the officers was sworn as section 780.37 Codes 1962, 1966, requires of an officer in charge of the jury during its deliberations nor had the court permitted the jury to separate after retiring to deliberate. (See Code section 787.3,

Par. 3). The case was reversed for error in jury instructions and what was said as to conduct of the officers was so it would be avoided on a retrial.

In State v. Neville, 227 Iowa 329, 288 N.W. 83, the county attorney *who prosecuted the case* gratuitously transported a juror between the county seat and her home (20 Miles each way) all three days of the trial. Obviously this gratuity placed the juror under an obligation to the prosecutor. The per curiam opinion is largely based on Lynch v. Kleindolph, infra, 204 Iowa 762, 216 N.W. 2, 55 A.L.R. 745.

Chicago J. S. L. Bank v. Eggers, 214 Iowa 710, 711, 243 N.W. 193 affirms *the trial court's grant of a new trial* because plaintiff's field representative and principal witness gratuitously transported a juror the 18 miles between the county seat and his home during the trial. We held abuse of discretion in the ruling did not appear. This is from the opinion: "The granting of the motion for a new trial is a discretionary matter with the trial court, and we have persistently refused to interfere therewith unless it appears there has been an abuse of the exercise of this discretion. (citations)"

In Lynch v. Kleindolph, supra, 204 Iowa 762, 216 N.W. 2, 55 A.L.R. 745, the successful defendant and a juror, during the noon recess of the trial, rode together to the former's home (the county "poor farm") in his automobile, had dinner together, and then returned to the trial. We held a new trial should have been granted because of the favor granted the juror by the successful party.

Stafford v. City of Oskaloosa, 57 Iowa 748, 11 N.W. 668 (1882) *is a flagrant case* of gratuities furnished a juror by an attorney for the successful plaintiff during a week-end adjournment of the trial. The juror was an overnight guest in the attorney's home, driven 16 miles to his own home by the attorney where a birthday party was held for the juror, the attorney presented him with a chair and returned

him to the attorney's home where he was again an overnight guest. As in the other precedents cited in the majority's Division I on this point, these facts were shown without dispute. Other errors also required a new trial. Any attempt to compare the present case to Stafford's seems *too farfetched for discussion.*

The remaining precedent the majority cites is Daniels v. Bloomquist, 258 Iowa 301, 305–307, 138 N.W.2d 868, 871–872. There after the jury had been deliberating more than 12 hours the bailiff called the foreman from the jury room at the judge's request and told him the judge wanted to see him, the foreman was gone from the jury room five to seven minutes and upon his return told the other jurors they would have to reach a verdict, about 15 minutes later the jury was called into the courtroom where the court gave an additional instruction in the absence of both parties and their attorneys, the verdict was returned about 3:45 a. m. We held sending the bailiff to the jury room, removing the foreman five to seven minutes *and his assertion upon return to the jury room they would have to reach a verdict* required a reversal. Other reversible errors were also committed.

In connection with Daniels v. Bloomquist, supra, see State v. Fiedler, 260 Iowa 1198, 152 N.W.2d 236, 241–242, where we found no prejudice resulted to the defendant from challenged conduct of the trial court in communications between judge and jury and affirmed the conviction.

As before indicated, in the cases the majority cites the facts held to constitute misconduct were clearly shown without dispute. In State v. Neville, Chicago J. S. L. Bank v. Eggers, Lynch v. Kleindolph and Stafford v. City of Oskaloosa, gratuities or favors of substantial value were furnished a juror by the prevailing party or one closely identified with it. No comparable situation has been shown here. Under the undisputed testimony of the lady bailiff it is probable no juror drank

any coffee or read the note placed near it on the morning of March 14 and no juror was told on the preceding day that the Guthrie county attorney had any part in furnishing it. And, as stated, no one claims the Shelby county attorney, who prosecuted the case, had any real or apparent connection with the coffee incident.

Even "where the facts on which a claim of misconduct is based are in dispute we will not interfere with the trial court's determination of the matter if supported by substantial evidence. Such determination has about the same force as a jury verdict. (citations)" Hackaday v. Brackelsburg, 248 Iowa 1346, 1352, 85 N.W.2d 514, 517–518; Hutchinson v. Fort Des Moines Com. Servs., 252 Iowa 536, 543, 107 N.W.2d 567, 571.

See also on this phase of the appeal In re Estate of Springer, 252 Iowa 1220, 1234–1236, 110 N.W.2d 380, 389–390; Hicks v. Goodman, 248 Iowa 1184, 1195–1196, 85 N.W.2d 6, 12–13; Mongar v. Barnard, 248 Iowa 899, 908–909, 82 N.W.2d 765, 772; Krieg v. Grant, 248 Iowa 396, 405, 80 N.W.2d 724, 729.

II. Defendant's second assigned error in which the majority also finds "some merit" is the overruling of his motion for new trial based upon claimed misconduct of the (Shelby) county attorney during cross-examination of defendant in alleged persistent efforts to poison, inflame and prejudice the jury by questions and statements of inadmissible matters not supported by the record.

Defendant's direct testimony differs from the state's largely in that he contended he went to Musich's home for the announced purpose of talking to him about crossing the picket line the U.P.W.A. had set up at the packing plant in Harlan where Musich was a maintenance man, when there is substantial evidence defendant's real purpose was to administer a beating to Musich because he continued to work during the strike; defendant said he asked for and was granted permission to enter the home while Mr. and Mrs. Musich denied consent was given; defendant testified he knocked Musich down with his fist rather than with a blackjack which he said he "did not own" while there is persuasive evidence for the state that defendant used a blackjack.

Incidentally, under Iowa law, chapter 736A Code 1966, entitled "Labor Union Membership", Musich had the right to work at the plant, and that of course required crossing the picket line, without joining the union.

On cross-examination defendant testified he left for Harlan on the day of the alleged crime from Perry (about 80 miles distant) where he was president of the U.P.W.A. local and that he knew one Karen Pollock at Adel (about 20 miles from Perry). He was then asked if he did not tell her that day he was going to Harlan to hit somebody over the head. Defendant's objection that the question was highly improper cross-examination and not supported by the record was overruled and he answered "No." He was then asked if he saw Karen Pollock that day. Over defendant's objection of irrelevant and immaterial he said he talked to her at her home between noon and 2:00 p. m. The next question was whether he then had a blackjack in his possession. There was no objection to this question until after defendant gave a negative answer, no excuse was offered for the delay in making the objection, and no motion to strike it until the end of the cross-examination as explained infra. See Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1262–1263, 30 N.W.2d 97, 102–103 and citations; Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 451, 138 N.W.2d 93, 96, 10 A.L.R.3d 247; State v. Smith, 248 Iowa 603, 610, 81 N.W.2d 657, 661.

Asked whether he had any discussion with Karen Pollock about a blackjack, defendant answered no blackjack was talked about, involved or had. The court sustained defendant's objection to the next question as to when he had last seen Karen Pollock. *This question was not answered nor repeat-*

*ed.* Defendant was then asked if he knew "where Karen Pollock is today." Defendant's objection as irrelevant and immaterial, without bearing upon the issues, was not ruled upon but this question too was never answered. Thereupon at the prosecutor's request, the trial court, his reporter, defendant and the attorneys went into the judge's chambers. The discussion, part of which the majority sets out, was there had in the jury's absence although this fact does not clearly appear from the opinion.

*The last two unanswered questions to defendant furnish the sole possible basis in the record for the majority's assertion "By a series of questions the State attempted to show that Karen Pollock was unavailable as a witness and that defendant was somehow responsible for her absence."*

In chambers the prosecutor informed the court Karen Pollock was to be a rebuttal witness but could not be located and he wanted to inquire from defendant if he knew her then whereabouts. The court stated he thought this would be improper. When the court inquired if the county attorney had information as to whether *someone* had talked to this witness (Karen Pollock)—evidently in an attempt to dissuade her from testifying for the State—the attorney answered "Yes, but it is hearsay." I find no concession by him, as the majority asserts, that his information defendant told Karen Pollock he was going to Harlan and hit somebody on the head was hearsay.

When the court indicated he did not feel the State could examine defendant as to his having had something to do with Karen Pollock's unavailability as a witness "unless you have some actual proof of that" the prosecutor replied "I am not inserting error in the record. I will not pursue it further." The court then stated that further "questioning along this line should not be pursued."

Defendant's counsel then stated that when the prosecutor finishes his questions "on this Karen Pollock thing, if he doesn't link it up any more than he has, I want to move

to strike it as irrelevant, immaterial and unsupported by any record evidence," and that he wanted to make the motion in the jury's presence. The prosecutor then suggested, in effect, that ruling on such a motion be withheld until "we are able to find out where she (Karen Pollock) is and get ahold of her." The court then made this statement which is significant in considering this second assigned error: "I suspect at this time it would be best to wait until we know what develops tomorrow." This clearly shows the court did not regard the prosecutor's suggestion as improper or a violation of the court's direction that further questioning "along this line should not be pursued."

Defendant's counsel thereupon objected to withholding his proposed motion to strike or the ruling thereon until the next day because "By then they (the jurors) will get to consider it all night and *they will forget what we are talking about and what it (the proposed delay) does is* to rap it into defendant twice until he has to move to strike it and *that is the reason I make the motion now while the prejudicial effect of it can be overcome by the court taking it away from the consideration of the jury.* If the prosecutor can come forth with something to hook it into, the ruling can then be reversed or the evidence admitted."

Further discussion between the prosecutor and defendant's counsel followed in which the latter assured the former that if he could bring in proper rebuttal of defendant's statements as a witness he would "not object to it on the basis of foundation, if this is the foundation you need, so you won't have that problem". The court concluded what took place in chambers by announcing that in the then state of the record he would have to admonish the jury to disregard, and to strike, all "those statements" now. Thereupon the court directed the county attorney to proceed with the cross-examination of defendant before the jury.

After further cross-examination filling three and one half pages of the record, de-

fendant moved to strike all the cross-examination, both questions and answers, that pertain to Karen Pollock and any conversations asked about or inferred as irrelevant and immaterial and *therefore improper* and asked that the jury be admonished not to consider any of it. The county attorney then asked "that ruling be reserved and allow us enough time to try to find this women?" Defendant's counsel observed the statement was improper. The court immediately sustained counsel's motion and struck from the record any questions to and testimony of defendant regarding Karen Pollock and admonished the jury "not to consider any of this matter as part of the record."

I do not construe anything the prosecutor said in chambers as an indication he was improperly attempting (much less that "his avowed purpose was to put before the jury by insinuation and innuendo highly damaging facts * * *" as the majority asserts) to leave with the jury the inference that defendant was repsonsible for the unavailability of the Pollock woman as a witness, nor did the trial court or defense counsel do so at that time. The prosecutor did admit he could not then produce her as a witness and asked for time, at least until the next day, to try to locate her. The trial court first stated, in effect, it would be best to wait until then to dispose of the matter but at the insistence of defense counsel finally denied the request for any delay.

Further, I disagree with the majority's statement regarding the prosecutor's request for delay: "Once more the obvious purpose was to create the impression, without any support, that defendant was responsible for Karen Pollock's absence." Nor would a responsive answer to either of the two unanswered questions asked just before court and counsel went into chambers leave such an impression. Defendant's answers to the questions to him on cross-examination were not prejudicial to him nor were the questions objectionable on any ground timely asserted by his counsel.

Further, testimony of Karen Pollock, if produced, that defendant told her he was going to Harlan and hit somebody on the head would have added little to the evidence received that such was his purpose and he did just that as soon as Musich turned his head and defendant entered his home. The trial court instructed the jury that in order to convict of the offense charged the jury must find the breaking and entering was done with the specific intent on the part of defendant to commit a public offense in the Musich home, to-wit: assault and battery. The jury necessarily so found, the majority holds there was sufficient evidence to support the finding and it is not contended otherwise on this appeal.

As indicated in Division I, *supra*, the majority completely ignores in both that division and this the considerable discretion uniformly accorded the trial court until now in ruling on a claim of misconduct of either court official or counsel.

State v. Barton, 258 Iowa 924, 931–932, 140 N.W.2d 886, 891, thus states the applicable rule, with all justices concurring in this part of the opinion: "The trial court is in a much better position than we are to judge whether claimed misconduct of counsel is prejudicial; considerable discretion is allowed the trial court in passing on such a matter; we will not interfere with its determination unless it clearly appears there has been a manifest abuse of discretion; * * * (citations)"

Virtually the same language also appears in State v. LaMar, 260 Iowa 957, 151 N.W.2d 496, 501 and State v. Mercer, 261 Iowa 371, 154 N.W.2d 140, 142.

After citing and analyzing several of our precedents, State v. Jensen, 245 Iowa 1363, 1368, 66 N.W.2d 480, 482, continues: "It is the sound reasoning of these and other Iowa cases that the trial court has before it the whole scene, the action and incidents of the trial as they occur, and is in a much better position to judge whether the defendant has been prejudiced by misconduct of opposing counsel, if there is such. * * *

The trial court occupies a position of vantage and is rightly given a considerable discretion in determining whether prejudice has resulted."

State v. Jensen has been approved many times in our later opinions. I would adhere to what is said in the precedents just cited.

Although it ignores the matter of discretion vested in the trial court in resolving a claim of misconduct of counsel, the majority concedes such misconduct alone is not reversible error unless it deprives defendant of a fair trial. One of our latest opinions, State v. Levy, Iowa, 160 N.W.2d 460, 467, with all justices concurring, thus states the complete rule: "we have repeatedly held, misconduct on the part of counsel for the State will generally be regarded as harmless unless it results in depriving accused of a fair trial or in a miscarriage of justice. See State v. Mercer, supra, 261 Iowa 371, 154 N.W.2d 140, 142, and citations" Since there has been no miscarriage of justice in the trial court here, the part of the last quotation on that point may be disregarded for present purposes.

Further, on at least four occasions we have quoted with approval this from 24A C.J.S. Criminal Law § 1902(1)a or the original volume 24 C.J.S. Criminal Law (§ 1902a pages 896–898): "A cause will not necessarily be reversed because of alleged misconduct of counsel. *On the contrary, appellate courts are strongly inclined against setting aside convictions because of misconduct of counsel.* * * * Misconduct of counsel is generally regarded as harmless and not cause for reversal * * * where it has not resulted in depriving accused of a fair trial, or in a miscarriage of justice * * *." (emphasis added); State v. Case, 247 Iowa 1019, 1029, 1030, 75 N.W. 2d 233, 240; State v. Long, 250 Iowa 326, 335, 93 N.W.2d 744, 749; State v. Hess, 256 Iowa 794, 800, 129 N.W.2d 81, 84; State v. Mercer, 261 Iowa 371, 154 N.W.2d 140, 142: State v. Levy, supra, cites the Mercer opinion.

As stated at the outset of Division I, supra, defendant made five motions for mistrial. All were overruled. Complaint is made here of the ruling on only one—that based on the coffee incident. The majority ignores the pertinent fact defendant made no motion for mistrial based on claimed misconduct of the prosecutor during the cross-examination of defendant. We may properly assume counsel deliberately refrained from doing so and it was not an oversight. It is reasonable to conclude such a motion was not made because counsel felt grounds therefor were lacking.

It is proper to point out defendant has been represented at the trial and here by counsel of his choice who are widely experienced in trial and appellate practice in both civil and criminal cases. It is not intimated counsel was incompetent.

A leading precedent, applicable here, on the effect of failure to promptly move for a mistrial where misconduct of counsel is claimed is Agans v. General Mills, Inc., 242 Iowa 978, 985, 48 N.W.2d 242, 246, which states: "Counsel for defendants were apparently not disturbed by the argument when made. They might have moved promptly for a mistrial then or at the close of the argument. They elected to await the jury's decision, if indeed they thought any serious error had been committed. Like the trial court we are powerless now to grant them relief, * * *"

This language is repeated in Mongar v. Barnard, 248 Iowa 899, 907, 82 N.W.2d 765, 771 and Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 716–717, 107 N.W.2d 85, 91. See also State v. LaMar, supra, 260 Iowa 957, 151 N.W.2d 496, 502.

After conceding the rule is that prompt withdrawal by the trial court of matter thought to constitute prejudicial misconduct and then instructing the jury to disregard it ordinarily cures any error, the majority asserts the county attorney's misconduct here was so flagrant it could not be thus removed from the jurors' minds and may well have influenced the verdict. The assertion

this is such an exceptional case the general rule is inapplicable goes further than defendant's counsel did when the matter was presented to the trial court and is quite inconsistent with his then position.

As stated, counsel then argued that if his motion to strike the alleged improper cross-examination of defendant were not made until *the next day* the jurors would forget it and making the delayed motion would remind them of the matter "and that is the reason I make the motion now *while the prejudicial effect of it can be overcome by the court taking it away from the consideration of the jury."*

It is clear defense counsel had no thought the claimed misconduct of the county attorney was so "toxic in character as to poison the minds of the jury beyond any hope of removing prejudice by" its withdrawal. Counsel obviously felt this phase of the case was subject to the general rule above referred to, not the exception to it, as the majority professes to feel. The court promptly granted the only request defendant made during the trial because of this alleged misconduct and I would hold his assigned error based on overruling the motion for new trial on this ground is without merit.

As with the precedents cited in the majority's Division I to support the conclusion there reached, those cited in its Division II are not in point. Brief review follows of the Iowa cases cited.

State v. Brundige, 118 Iowa 92, 94, 91 N.W. 920, 921, involves no claim of misconduct of counsel but there were reversible errors in rulings on evidence and instructing the jury. None of the incompetent evidence to which the majority refers was withdrawn until the close of the trial and then only part of it was stricken.

State v. Paden, 199 Iowa 383, 386, 202 N.W. 105, 107, is a conspiracy case in which incompetent evidence of overt acts was received over proper objection and motion to strike made and overruled. At the close of all the state's testimony some, but not all, of the motions to strike were first sustained. Our opinion thus refers to the evidence erroneously received: "The evidence was toxic in character, and in our judgment it is beyond the realm of human possibility that the mind of the jury was not poisoned by the facts admitted. It resulted in incurable prejudice. This evidence was permitted to go to the jury in considerable detail."

In our case the principal basis for the claim of misconduct of the prosecutor is the mere asking of two unanswered questions, neither of which could reasonably cause the jury to infer defendant was responsible for the unavailability of the Pollock woman as a witness. And this, with all cross-examination complained of, was promptly and fully withdrawn as soon as the court was asked to do so.

State v. Tharp, 258 Iowa 224, 232–235, 138 N.W.2d 78, 83–84, holds there was reversible error in overruling objection to a hypothetical question to an expert witness which assumed an important fact not in evidence and that the error—which the state conceded—in admitting the evidence was not cured by a jury instruction, upon submission of the case, to disregard the answer if the jury found the facts assumed in the question were not established by the evidence. The answer erroneously received was stressed in the state's final argument to the jury and belatedly withdrawn only upon condition the above finding by the jury was made.

The present case bears no fair resemblance to State v. Tolson, 248 Iowa 733, 735, 82 N.W.2d 105, 106, one of the most flagrant cases of persistent prosecutor misconduct in our reports. See State v. Long, supra, 250 Iowa 326, 332, 93 N.W.2d 744, 747; State v. Mercer, supra, 261 Iowa 371, 154 N.W.2d 140, 143; Baysinger v. Haney, Iowa, 155 N.W.2d 496, 499.

The record in State v. Moon, 167 Iowa 26, 35, 148 N.W. 1001, was well filled with numerous prejudicial errors of the trial court and persistent efforts of the prose-

cutor, commencing with his opening statement to the jury, to get before it the commission of many crimes by the accused other than the one charged. See comment on the opinion in State v. Musack, 254 Iowa 104, 111, 116 N.W.2d 523, 527.

State v. Poston, 199 Iowa 1073, 1075, 203 N.W. 257, 258, reverses the conviction for prejudicial misconduct of the prosecutor in several respects and his persistent refusal to abide by the ruling of the court even in argument to the jury, as well as for error in jury instructions. State v. Canalle, 206 Iowa 1169, 1173, 221 N.W. 847, refuses to reverse a conviction on the authority of State v. Poston, State v. Paden, supra, and two other precedents. The present case is much closer to State v. Canalle than to State v. Poston. And counsel for Canalle promptly moved for a mistrial there as soon as the claimed misconduct occurred, something not done here.

The misconduct of the prosecutor in State v. Gill, 259 Iowa 142, 143 N.W.2d 331, in getting before the jury much incompetent evidence of immoral and criminal conduct of defendant wholly unrelated to the crime charged and remote therefrom so far exceeds anything done here it is not surprising the majority concedes it is "not precisely in point."

III. I agree with the majority's holding there is sufficient evidence to support the verdict. I think the evidence is ample.

This from State v. White, 260 Iowa 1000, 1002, 151 N.W.2d 552, 553, may be repeated here: "In the trial of a criminal case the basic question is or should be proof beyond a reasonable doubt of defendant's guilt."

There is no merit in defendant's final assigned error in the giving of jury instructions 10 and 14 and refusal of defendant's requested instruction *in lieu of No. 10*. Although my understanding is this part of the opinion (most of Division III) to which this dissent is written is not concurred in by a majority of the court and so expresses a minority view, it will be here treated as if written for the majority.

Although the majority admits there is sufficient evidence defendant entered the Musich home by breaking and entering with intent to commit an assault upon Musich at the time, it seems clear its decision on the final assigned error stems in part from its belief it is unlikely the latter did not assent, expressly or impliedly, to the entry. I do not share this belief. The evidence on which the majority asserts the circumstances of the entry "were extremely unusual" is *largely that of defendant and overlooks the state's evidence which of course the jury had a right to believe.*

It was brought out on defendant's direct examination he had previously been convicted of a felony—a matter properly to be considered in passing on his credibility as a witness. State v. DeRaad, Iowa, 164 N.W.2d 108, 112.

The state's evidence is that shortly after eight on the evening in question there was a knock on the closed main door of the Musich home, he opened the door and put his hand against the storm door, was asked if he was Bob Musich, answered that he was, the visitor asked if he could come in to talk to Musich, the latter did not reply (this was repeated), but turned to look inside toward his wife and children. "As I turned my head, my wife screamed, and I was struck on the head. I was just inside the doorway when I was struck. The person then came into the house and struck me several times, knocking me to the floor."

Mr. and Mrs. Musich testified they never saw the person, conceded to have been defendant, before. Defendant evidently felt it necessary to inquire if the occupant was Musich. There is no evidence defendant revealed his name or otherwise identified himself to Musich.

Under these and other record facts it is not unlikely Musich did not consent to defendant's entry into his home.

Mrs. Musich's adult brother lived with the Musichs. He left the home "just after 8:00 and defendant came to the door in about two seconds. I (Mrs. Musich) closed the door and had just sat down when defendant came to the door."

But even under defendant's testimony Musich told him he could enter the home and opened the storm door for him to do so, there is ample evidence from which the jury could find no valid consent was given defendant to enter. There is persuasive evidence such entry was procured by the false representation of defendant that he desired to talk with Musich when his real purpose was to administer a severe beating to the occupant because he crossed the picket line the union had set up around the plant where Musich was custodian. At least the state's testimony is such a beating was administered as soon as Musich turned toward his wife and children without answering defendant's request to enter and without defendant talking to him except he had previously asked Musich's name.

As to the beating, the state's evidence is defendant struck Musich several times with a blackjack taken from his pocket, on the end of which was a button 1¾ inches in size, knocking Musich to the floor. In all, six or seven blows were struck, raising a knot on the side of the head as large as a half dollar and as thick as a man's finger.

It is obvious that if defendant's purpose in asking permission to enter the home was merely to talk to Musich he had no reason to arm himself with a blackjack Mrs. Musich testified she saw him pull from his jeans to strike her husband.

The law is clear that entry to a home procured by means of fraud is the legal equivalent of entry by force and constitutes a constructive breaking. 13 Am.Jur.2d, Burglary, section 13, pages 328 and 329, thus states the applicable law: "Constructive breaking within the law of burglary occurs where the entry is accomplished by means of fraud * * *. This is so because

the law regards force and fraud with equal abhorrence, * * *

*"Where entry has been effected under pretense of having business with the owner or of paying a social visit, it has been well said that the law is not so impotent as to permit a burglar to enter a house under such circumstances and yet evade the responsibility of his act."* (emphasis added).

12 C.J.S. Burglary § 9, page 672, contains this: "Although a person may enter a house without any actual breaking at all, and even through an open door, the circumstances may be such as to make his entry a constructive breaking, so as to render him guilty of burglary. Such is the case when a person effects an entrance by fraud or conspiracy. A statute punishing anyone who shall 'forcibly break and enter' * * * applies when an entry is effected by trickery or deception, so as to constitute a constructive breaking at common law."

The majority cites 12 C.J.S. Burglary § 12, pages 675–676. The citation reads:

*"Except in cases of constructive breaking where an entry is effected by fraud or intimidation,* as has been shown in § 9 supra, there can be no breaking, and therefore there is no burglary where the occupant of a house, * * * expressly or impliedly invites or consents to the entry." (emphasis added).

The majority has completely overlooked the italicized language at the beginning of this section 12.

The annotation in 93 A.L.R.2d 531, also cited by the majority, reaches the same result under slightly different reasoning:

"Also, where the implied consent to enter is limited to a specific purpose, entry for a different purpose is outside the consent. (citations)

"Where the ingredients of burglary, including a breaking or forcible entry with an intent to steal, have been proved, implied consent to enter the burglarized building

for limited, lawful purposes is not a defense to a charge thereof. (citation)"

A leading precedent on the law of constructive breaking, cited in both Am.Jur.2d and C.J.S., supra, as well as later opinions is Nichols v. State, 68 Wis. 416, 32 N.W. 543, 545–546. The case makes clear that entry procured by the false representation of the intruder that he desired to make a social or business call when he really intended at the time of entry to commit a felony (it is "a public offense" under our statute) amounts to burglary both at common law and under statutes similar to ours.

See also State v. Keys, 244 Or. 606, 419 P.2d 943, 944–947, cited by the majority, which approves Nichols v. State and, like Nichols, quotes extensively from Cooley Blackstone, Book IV, ch. 16, pages 226–227, including this:

"So also to knock at the door, and upon opening it to rush in, with a felonious intent; or under pretense of taking lodgings, to fall upon the landlord and rob him; * * * all these entries have been adjudged burglarious, though there was no actual breaking; for the law will not suffer itself to be trifled with by such evasions, * * *."

The Keys opinion also contains this:

"Since the word 'breaking' as used in the common law with reference to the crime of burglary had a definite and fixed meaning which included fraudulent and surreptitious entries, it is the established rule that the legislature used the term 'breaking' in its common-law sense with reference to the statutory crime of burglary." (page 945)

State v. Keys and other authorities the majority cites do not support its decision.

It follows from what has been said that instructions 10 and 14 are more favorable to defendant than he was entitled to in ignoring the law of constructive breaking. The jury might properly have been told in substance that if defendant on the night in question gained admission to the Musich home on the false representation he desired to talk with Musich when his real intent was to administer a beating to him therein, this would constitute breaking and entering as defined in section 708.1 Code 1966.

The majority holds instruction 10 was prejudicial error in stating "breaking and entering" must be against the consent of the occupant, without adding "express or implied" or perhaps that consent may be implied from circumstances or conduct.

So far as concerns the refusal of the instruction defendant requested in lieu of No. 10, it is a complete answer to the assigned error that No. 10 told the jury fully as much about consent as the request would have if given. The request does not refer to the matter of consent implied from circumstances. The court had a right to assume this formal request was the instruction on consent defendant desired. It is not contended the request was not worded as defendant's counsel intended it should be. If, as the majority holds, instruction 10 on consent was prejudicial error, the error was invited by defendant and he cannot complain. We have repeatedly so held under comparable factual situations.

Defendant's requested instruction states twice that in order to convict, the jury must find not only that access to the home was against the consent of the occupant but also without his knowledge. Instruction 10 differs from the request only in not requiring a finding of lack of knowledge. As the majority concedes, knowledge by the occupant of the entry is no defense to a charge of breaking and entering and instruction 10 properly omits this requirement of the request. To have given it would have been error prejudicial to the state. Defendant does not contend otherwise on this appeal. See State v. Abley, 109 Iowa 61, 64, 80 N.W. 225, 46 L.R.A. 862; State v. Stodola, 257 Iowa 863, 866, 134 N.W.2d 920, 922.

Before considering the authorities applicable to the assigned error in question, it may be observed there is little, if any, evidence from which the jury could properly find defendant's entry into the home was with Musich's implied consent. Musich testified, as previously pointed out, that when defendant asked permission to enter the home to talk to the witness the latter made no reply but turned to look at his wife and children.

Defendant, however, testified "I said 'Can I come in and talk to you?' I can't say whether he (Musich) said yes, but I am sure, yes, he said 'Yes' and proceeded to open the door and let me in."

Thus there is a clear conflict in the evidence as to whether Musich consented to defendant's entry even for the avowed purpose of talking to the former. If the jury believed defendant and followed instruction 10, as it presumably would, his entry would clearly be with consent period. Surely the jury would find that Musich's opening the door and letting defendant in the house would not be entry "against the consent of the occupant," within the plain meaning of instruction 10 even though the instruction was not amplified by adding "express or implied" or "express or implied from circumstances." I do not share the majority's fear the jury would not understand from instruction 10 as given that opening the door to let defendant in, if this were done, would amount to consent to enter, not merely consent implied from conduct.

The only circumstance from which a claim of implied consent may possibly be urged comes from Musich's testimony that when defendant asked to enter the home the witness turned to look at his wife and children. Defendant did not testify he considered or believed this indicated consent to enter. Nor does other testimony support a claim of such belief. When belief of a witness is relevant and material he may testify directly thereto as to any other fact. Williams v. Stroh Plbg. & Electric,

Inc., 250 Iowa 599, 603, 94 N.W.2d 750, 754, 82 A.L.R.2d 465 and citations; Colburn v. Krabill, 232 Iowa 290, 292, 3 N.W. 2d 154, 155 and citations; 29 Am.Jur.2d Evide .ce, section 355, page 405.

The county attorney sought to show by Musich why he turned to look inside at his wife and family. Defendant objected to this *"as irrelevant and immaterial. It has no bearing upon the issues."* The objection was sustained. No objection was made to the form of the question. To contend now that Musich's turning to look at his wife and family, without answering defendant's request to enter, is evidence of consent implied from conduct is a change of position here from that taken at the trial which should not be approved.

We have held many times that where, as here, the substance of a requested instruction is covered in the instructions given it is not error to refuse the request. State v. DiPaglia, 247 Iowa 79, 86, 71 N.W.2d 601, 605, 49 A.L.R.2d 1223, cert.den. 352 U.S. 1017, 77 S.Ct. 564, 1 L.Ed.2d 549; Shank v. Wilhite, 256 Iowa 982, 985, 129 N.W.2d 662, 664 and citations; Wagaman v. Ryan, 258 Iowa 1352, 1361, 142 N.W.2d 413, 418; Henneman v. McCalla, 260 Iowa 60, 148 N.W.2d 447, 452–453; Hartwig v. Olson, Iowa, 158 N.W.2d 81, 87–88.

53 Am.Jur., Trial, section 527, page 424 contains this: "The rule has long been established by an unbroken line of judicial authority that the refusal to give a requested instruction, even though it states the law correctly, does not constitute * * * error if it is substantially covered by the instructions given, *or if everything in the requested instruction which the party is entitled to have given has already been given by the court in other instructions."* (emphasis added)

Under the authorities cited and many others to like effect I would hold it was not error prejudicial to defendant to refuse his requested instruction. See also authorities cited infra.

If it were true, as the majority holds, instruction 10 as given constitutes error in not stating that consent to enter might be implied from conduct or circumstances although the request made no mention of such proposition, the error was invited by defendant and he is in no position to successfully urge it here. A long line of authority as well as the plainest considerations of fairness to the trial court, not to mention fairness to the state, support this view.

After quoting his requested instruction, able counsel for defendant admits in his brief: *"Doubtless as a result of the statements of counsel,* the court then inserted instruction 10 on consent * * *." The reference to counsel must have been to defendant's counsel.

As far back as Campbell v. Ormsby, 65 Iowa 518, 520, 22 N.W. 656, 657, we held, to quote the first headnote:

"1. Practice: Asking Instruction is Waiver of Error in. Where defendant, before the court instructed the jury, asked a certain instruction to be given, which the court did not give in that form, but gave another instruction to the same effect, held that defendant could not, on appeal, be heard to complain that such instruction was erroneous."

Also this is from the opinion: "But the law will not permit him (appellant) to pursue this course. He cannot lead the court into an error by assenting to the doctrine of an instruction in which the error is found, and in this court seek to reverse the judgment on the ground of the error. (citations)"

Campbell v. Ormsby has been repeatedly followed in our later opinions.

State v. Wilson, 124 Iowa 264, 267, 99 N.W. 1060, 1061, (Sherwin, J.) contains this: "Instruction 6 was, in substance, asked by the defendant, and she cannot now complain thereof."

State v. Watkins, 147 Iowa 566, 568, 126 N.W. 691 (Ladd, J.), which affirms a conviction for first degree murder, states regarding an instruction, "The defendant requested that the jury be so instructed and therefore he cannot be heard to complain. See (citations)"

State v. Glaze, 177 Iowa 457, 461, 159 N.W. 260, 262 (Salinger, J.) contains this:

"II. In Instruction 3, the jury was told that, if the state had proven eight specified essentials beyond a reasonable doubt, it should find defendant guilty. Appellant asserts that these eight alone were not sufficient, and that there were other essentials which are not enumerated in the instruction. * * * If this enumeration does not embrace all that should have been proven, appellant may not complain. The instruction given is a substantial copy of Instruction 2, offered by defendant."

State v. Ellington, 200 Iowa 636, 643, 204 N.W. 307, 310, (Faville, C.J.) states: "Complaint is made of an instruction given by the court upon the question of good character. Appellant requested an instruction on this subject, and the instruction as given by the court substantially complied with the requested instruction. The court might well have enlarged upon the instruction; but it was not erroneous as given, and the court did not err in failing to amplify it beyond the provisions of the requested instruction. The instruction as given was not incorrect."

Odegard v. Gregerson, 234 Iowa 325, 332–333, 12 N.W.2d 559, 562 (Wennerstrum, J.) quotes with approval from Campbell v. Ormsby, supra, 65 Iowa 518, 520, 22 N.W. 656, 657 and cites several other Iowa decisions for the holding a party who leads the trial court into what he claims is error will not be heard to complain thereof on appeal. To like effect is In re Estate of Corbin, 235 Iowa 654, 661–662, 17 N.W.2d 417, 421 and citations. (Mantz, J.)

State v. Beckwith, 243 Iowa 841, 845, 53 N.W.2d 867, 869, (Hays, J.) in affirming a

judgment of death for first degree murder, all justices concurring, holds: "Defendant cannot now predicate error upon the court's doing the very thing they requested the court to do."

Hackman v. Beckwith, 245 Iowa 791, 800, 64 N.W.2d 275, 281 (Thompson, J.), after finding no proper exception was taken which clearly advised the trial court of appellants' complaint as to an instruction as given, proceeds to hold: *"In addition,* appellants' requested Instruction No. 6 was in substance and meaning identical with that given by the court to which objection is now made; and it is elementary a litigant cannot complain of error which he has invited or to which he has assented." (emphasis added.) Knudsen v. Merle Hay Plaza, Inc., Iowa, 160 N.W.2d 279, 285, approves this.

In State v. Hammer, 246 Iowa, 392, 399–400, 66 N.W.2d 490, 494 (Smith, J.) defendant complained on appeal of the exclusion of evidence he contended would be the only competent evidence on a vital issue. We pointed out the evidence was excluded at the trial on defendant's objection and held: "Manifestly defendant cannot blow hot and cold. We must hold he cannot assert here an error into which he himself led the trial court." The opinion quotes with approval from State v. Beckwith, supra, 243 Iowa 841, 845, 53 N.W.2d 867, 869, and other Iowa precedents.

State v. Osborne, 258 Iowa 390, 393, 139 N.W.2d 177, 179, contains this which fully supports the point now made:

"We are satisfied an accused is entitled to an instruction, if requested, to the effect his failure to testify creates no presumption or adverse inference against him. * * * *In any event, the giving of such an instruction, if demanded, would give to an accused no right to later complain, for error, if any, in complying with defendant's request would have then been invited.* (emphasis added.)" State v. Hammer, supra, is cited with approval.

The rule which should govern here was applied in State v. Sage, Iowa, 162 N.W.2d 502, 504.

Although claimed error in instructing the jury which was invited by appellant was not there involved, the principle here contended for was clearly recognized. This is from the Sage opinion:

"In State v. Rasmus, 249 Iowa 1084, 1086, 90 N.W.2d 429, 430, we quote this from what is now 24A C.J.S. Criminal Law § 1842: 'A party to a criminal proceeding cannot assume inconsistent positions in the trial and appellant courts and, as a general rule, will not be permitted to allege an error * * * in which he himself acquiesced, or which was committed or invited by him, or was the natural consequence of his own actions.'

"We have applied this rule to varying situations none of which appear more compelling for its application than the case at bar." Citing State v. Hammer, State v. Beckwith and State v. Osborne, all supra, in addition to State v. Rasmus, supra.

The Rasmus opinion refers to the rule there quoted, and repeated in State v. Sage, from C.J.S. as a fundamental one.

Other decisions supporting the views expressed above include Tilghman v. Chicago & N.W. R. Co., 253 Iowa 1339, 1350–1351, 115 N.W.2d 165, 172, and citations; State v. Adams, 339 Mo. 926, 98 S.W.2d 632, 108 A.L.R. 838, 845; Starkweather v. State, 167 Neb. 477, 93 N.W.2d 619, 625–626; Hoffer v. Burd, 78 N.D. 278, 49 N.W.2d 282, 293; Hook v. Crary, N.D., 142 N.W.2d 140, 150.

The views heretofore expressed are those prevailing generally. For example, 5 Am. Jur.2d, Appeal & Error, section 719 states:

"The doctrine of invited error has found wide application with regard to error in instructions. A party may not ask for appellate review of an error in giving an instruction which he himself requested, or which is substantially identical with one requested by him. * * *

"The rule that invited error as to instructions forms no proper subject of review has also been applied in criminal cases."

This from 5 C.J.S. Appeal & Error § 1507(2), pages 918–919 (1958), even more clearly supports this dissent:

"Accordingly, when the instruction requested by him is given in charge by the court, he is estopped to object that it was not sufficiently specific; that it was not complete; * * * that it did not include language which should have been incorporated * * *

"*The party at whose instance a charge was given cannot complain that it was not full enough where it was made in response to a written request setting forth the instruction desired, and the instruction as given was as comprehensive as the instruction set forth in the request.*" (emphasis added.)

The Iowa decisions cited in this dissent are by no means all those that support the view defendant cannot be heard to claim error in instruction 10 since it is in substance and effect what defendant requested. Such cases go back at least to 1874. See Smith v. Sioux City & P. R. Co., 38 Iowa 173, 174–175. No opinion has been cited or found to which there was any dissent on the point now discussed.

Aside from the grounds stated supra, there is another ground which supports this dissent to the majority's Division III. A defendant may not complain that an instruction should have been amplified in the absence of a request for such amplification. No such request was made here.

The majority concedes "We have frequently held, however, that when the trial court does instruct on a certain issue upon which defendant desires a more specific or additional instruction *he must make request therefor as provided in rule 196,* Rules of Civil Procedure. State v. Jensen, 245 Iowa 1363, 1371, 66 N.W.2d 480,

484; State v. Horrell, 260 Iowa 945, 151 N. W.2d 526, 532."

The majority also admits the requested instruction did not "*specifically*" refer to implied consent. It should have omitted the word "specifically" or followed it by such words as "or inferentially", "or impliedly". The request simply did not refer to implied consent, now asserted to be of overriding importance, but the trial court is charged with error for not doing so on its own motion, thereby placing a greater burden on it than on defendant's experienced counsel. The majority further admits: "The informal discussion heretofore mentioned and the objections there urged cannot serve as grounds for defendant's appeal." What does serve as a ground for this part of the appeal is not stated.

Since the majority in effect concedes the rule last stated herein and that the required request for amplification of instruction 10 was not made, only a few citations for the rule are deemed necessary. It should first be pointed out it is not claimed instruction 10 is incorrect as an abstract statement. Defendant's motion for new trial does not assert instruction 10 is incorrect. His objections therein to instructions 2, 3, 4 and 7 do assert "Said instruction does not properly, fully, correctly or adequately state the law * * * respecting burglary." In defendant's objections to instruction 10 in his motion, "completely" is substituted for "correctly."

State v. Nowells, 135 Iowa 53, 58, 109 N.W. 1016, (Weaver, J.) in affirming a conviction for second degree murder, holds, to quote the second headnote: "Error cannot be based on a refusal of instructions which are embodied in those given and are correct statements of the law, though possibly lacking in explicitness and definiteness, which objection the requested instructions did not cover." The holding is more fully explained on page 58, 109 N.W. 1016 of the opinion.

State v. Russell, 245 Iowa 1190, 1205, 66 N.W.2d 35, 43, (Bliss, J.) affirms a life

sentence for first degree murder. Defendant assigned as error the court's failure to instruct on his testimony that his participation, if any, in the killing was due to duress and threats to kill defendant if he did not do so. In denying the claim of error the opinion states: "We have many times held from our earlier decisions to our recent ones that a party desiring additional or more explicit instruction should request it."

State v. Wessling, 260 Iowa 1244, 150 N.W.2d 301, 309, affirms a conviction of breaking and entering and being an habitual criminal. Defendant assigned as error the court's failure to instruct that the State relied wholly upon circumstantial evidence. The motion for new trial objected to the instructions on this ground as section 787.3, subd. 7 Code, 1966 permits. We held that in the absence of a timely request for an amplifying instruction embodying what was omitted from the one given, it was sufficient to define direct and circumstantial evidence and tell the jury what was necessary to warrant conviction on the latter. The opinion reviews several precedents, including State v. Russell, supra, as well as State v. Jensen, 245 Iowa 1363, 1371, 66 N.W.2d 480, in which the majority seems to find comfort. Although all sitting judges concurred in the result only five concurred in the Wessling opinion.

State v. Hardesty, 261 Iowa 382, 153 N.W.2d 464, 471, holds: "It is well established in this jurisdiction that a party who desires additional or more specific instruction must make timely request therefor. His failure to do so leaves him without complaint upon appeal." State v. Wessling and cases there cited and State v. Russell, both supra, are given as authority.

Perhaps our latest decision upon the need to request amplification of an instruction is State v. McNeal, Iowa, 158 N.W.2d 129, 134 which cites with approval the Hardesty, Wessling and Russell opinions, all supra.

This from a recent Washington opinion, State v. Dana, Wash., 439 P.2d 403, 405,

is fully applicable here: "The test of the sufficiency of instructions given on the theory of the case has been held to be whether, from the instructions given, counsel may satisfactorily argue his theory of the case to the jury. (citations)

"The court's instructions afforded counsel ample opportunity to present his theory to the jury."

It is important to keep in mind: (1) Defendant's formal request for an instruction on consent came some time after the informal discussion between defendant's counsel and the trial court which the majority quotes at length. (2) As previously stated, the request was that the instruction therein set out be given *in lieu of No. 10 as given*. It was not for "an additional instruction", as the majority insists on asserting. (3) The majority assumes the language of instruction 10, "the breaking and entering * * * must be against the consent of the occupant", refers solely to express or verbal consent and that if Musich opened the door to let defendant into his home in response to the latter's request for permission to enter, this would merely be consent implied from conduct. The majority states: "Here there was not only evidence of verbal consent, which was in turn denied, but even more important was the evidence concerning the opening of the door as an implied invitation to enter."

As previously explained, I cannot believe any jury could find entry under such circumstances would be "against the consent of the occupant." Yet the majority's fear this jury may have so found furnishes the principal basis for its finding of "some merit" in this assigned error.

The majority cites no precedent which supports its holding in Division III under any such record as we have here. State v. Manning, 149 Iowa 205, 210, 128 N.W. 345, 347, and State v. Jensen, supra, 245 Iowa 1363, 66 N.W.2d 480 fully support this dissent. In State v. Wilson, 234 Iowa 60, 74, 11 N.W.2d 737, 744, and State v. Rowe,

238 Iowa 237, 26 N.W.2d 422, proper requests for an instruction on an important issue were refused and *no instruction on their subject was given.* Here, of course, an instruction on consent was given in substantially the language requested. In both Wilson and Rowe other serious error also required reversal.

Of State v. Cox, 240 Iowa 248, 254, 34 N.W.2d 616, 619; State v. Cusick, 248 Iowa 1168, 1170, 84 N.W.2d 554, 555, cited in the majority's Division IV, and cases where we have proceeded under Code section 793.18 to reverse, as the majority does here in Division IV, State v. Kramer, 252 Iowa 916, 919, 109 N.W.2d 18, 20 points out: "But these were *extreme* cases, in each of which the record showed *amply* that the defendant had not had a fair trial." (emphasis added.)

What the Kramer opinion says as to the purpose and effect of section 793.18 might also well be repeated here. The Kramer case has been approved several times as recently as State v. Ford, 259 Iowa 744, 752, 145 N.W.2d 638, 642, and State v. Horrell, 260 Iowa 945, 151 N.W.2d 526, 532.

IV. The majority finds "some merit in each of defendant's assigned errors." Although it carefully refrains from sustaining any of them and holds merely that the cumulative effect of the three assigned errors deprived defendant of a fair trial which, under section 793.18, requires a new one. I do not understand the majority includes in the quoted statement defendant's third assigned error as to claimed insufficiency of the evidence of guilt with which it expresses disagreement.

Nowhere in the 80 pages of briefs and arguments for appellant is the theory suggested on which the majority says it is obliged to reverse. Nowhere is it suggested defendant is entitled to relief under section 793.18. It seems the majority has seen fit to go out of its way to reverse this conviction.

State v. Kelley, 253 Iowa 1314, 1318, 115 N.W.2d 184, 186, (Thornton, J.) affirms a death sentence for first degree murder. The opinion quotes section 793.18 and follows with this:

"The duty placed on this court by section 793.18 is to decide criminal appeals according to the very justice of the case as shown by the record without regard for technical errors. (citation) It requires us to enter such judgment as the law demands. (citation) And we are not to consider mere technical errors which do not affect the result. (citations)"

Most of the quoted language is repeated in State v. Ford, supra, 259 Iowa 744, 752, 145 N.W.2d 638, 642.

It is not at all clear this court is obliged under section 793.18 to reverse this judgment. In my view the assigned errors in which the majority finds some merit are of the technical variety which have not been shown to affect the verdict.

Larson, Snell and Stuart, JJ., join in this dissent.

Mason, J., joins in the part of Division III of this dissent commencing with the second complete paragraph in column 2, page 49 which starts: "We have held many times * * *" and ending with the statement near the middle of column 2, page 53: "It was not for 'an additional instruction,' as the majority insists on asserting."