# IN THE COURT OF APPEALS OF IOWA

No. 19-2093
Filed April 14, 2021

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**BRYAN HALFHILL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.


        The defendant appeals from his convictions for second-degree sexual abuse, lascivious acts with a child, and lascivious acts with a child by soliciting a person to commit a sex act with a child.  **REVERSED AND REMANDED FOR NEW TRIAL.**


        Joey T. Hoover of Hoover Law Firm P.L.L.C., Epworth, for appellant.

        Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


        Considered by Bower, C.J., Vaitheswaran, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**POTTERFIELD, Senior Judge.**

Following a five-day jury trial, Bryan Halfhill was convicted of second-degree sexual abuse, lascivious acts with a child, and lascivious acts with a child by way of soliciting a person to commit a sex act with a child.[1] On appeal, Halfhill contends (1) the prosecutor engaged in misconduct, which should result in Halfhill receiving a new trial; (2) because of lack of corroborating evidence for his alleged accomplice's testimony, the State failed to present substantial evidence to support any of Halfhill's three convictions; and (3) the district court wrongly admitted testimony that constituted backdoor hearsay.

**I. Background Facts and Proceedings.**

Halfhill and Gina Urbain were in a romantic relationship for a number of years. They lived together from February 2018 until November 2018.

In November 2018, E.G. reported to her mother that Urbain, who is an adult relative of E.G., sexually abused her at a sleepover at Urbain's home a day or two before. E.G.'s mother confronted Urbain almost immediately, and Urbain admitted she perpetrated sexual abuse on E.G. The allegations were then reported to the local police and the Iowa Department of Human Services (DHS).

---

[1] Iowa Code section 709.8(1)(d) (2018) makes it illegal to "solicit a child to engage in a sex act or solicit a person to arrange a sex act with a child." As this was charged and explained to the jury, it was alleged Halfhill violated this code section by soliciting his adult girlfriend, Gina Urbain, to arrange a sex act with a child, which Urbain then committed—not Halfhill—to satisfy Halfhill's sexual desires. The jury was instructed, without objection, that Halfhill was guilty if he solicited Urbain to engage in a sex act with a child, Halfhill was at least sixteen at the time he did so, and he did it with the intent to around or satisfy his or the child's sexual desires. The court described this crime as lascivious acts with a child by way of solicitation of a person to commit a sex act with a child.

In early December, Investigator Jill Bellman and a DHS social worker visited with Urbain's son, five-year-old D.E.U., at his school. They believed D.E.U. was home at the time Urbain sexually abused E.G. and may have some value as a witness. Investigator Bellman made an audio recording of this conversation with D.E.U. During it, D.E.U. made statements about being allowed to touch Halfhill's "peepee" and Urbain's "butt." Based on this, Investigator Bellman expanded the investigation to add D.E.U. as a possible victim and Halfhill as a possible perpetrator of sexual abuse.

During their investigation, officers downloaded the contents of Urbain's cell phone. They found hundreds of images of child pornography, including images they believed showed E.G. and D.E.U.—some with Urbain committing sex acts on children and others showing the children's genitalia.

When she spoke to police, Urbain admitted sexually abusing D.E.U. and E.G. She told the police she did it because Halfhill wanted her to and he used physical and emotional abuse to force or coax her. According to Urbain, Halfhill physically participated in sexually abusing D.E.U. There were also times when he was not home and he would ask her to commit sexual acts on D.E.U. and send photos or videos as proof. Urbain also claimed Halfhill forced her to take photos of herself committing sex acts on E.G. and that he wanted her to find him a young girl to sexually abuse.

The State charged Halfhill with second-degree sexual abuse of D.E.U., lascivious acts with a child regarding D.E.U., and lascivious acts with a child by way of soliciting Urbain to arrange a sex act with a child. Halfhill pled not guilty to all three charges.

A five-day jury trial took place in October 2019. Urbain, who was not promised a benefit for testifying, testified against Halfhill at his trial thereby incriminating herself under oath. D.E.U. was not called to testify, and the State produced nothing linking Halfhill to the photographs on Urbain's phone—he was not in the photos; and there was no evidence Urbain sent them to him or that he asked for them. Halfhill testified in his own defense and denied sexually abusing D.E.U. or ever asking Urbain to sexually abuse either D.E.U. or E.G. He said Urbain threatened to put the blame on him if he did not find a way to solve the issue for her once Urbain's actions came to light with E.G.'s report.

The jury found Halfhill guilty of all three charges. He was later sentenced to a term of incarceration not to exceed thirty years. He appeals.

## II. Discussion.

Halfhill contends the district court improperly admitted "backdoor hearsay" during Investigator Bellman's testimony. A "backdoor hearsay" issue occurs when "the question and answer [does] not produce hearsay 'in the classic or textbook sense,' [but] the questioning was nevertheless designed to circumvent the hearsay rule and present the jury with information from unsworn, out-of-court sources." *State v. Huser*, 894 N.W.2d 472, 497 (Iowa 2017) (citation omitted); *accord id.* ("[T]hrough a questioning strategy, the State sought to leave the impression with the jury about the existence of inadmissible evidence."). We review for errors at law. *Id.* at 494. "When hearsay is improperly admitted the error is presumed to be prejudicial unless the State shows the contrary." *Id.* "The State may show improperly admitted evidence was not prejudicial by proving the error was harmless beyond a reasonable doubt." *Id.*

Here, before Halfhill's jury trial began, the State filed a motion asking the court to rule on the admissibility of the out-of-court statements made by D.E.U. to Investigator Bellman and the DHS worker at his school. The State sought to admit the audio recording of the conversation, asserting D.E.U. was not competent to testify at Halfhill's trial. Following a hearing on the motion, the court ruled D.E.U.'s statements were inadmissible hearsay and ordered the State to instruct its witnesses "to make no mention of any such statements."[2] During trial, while the prosecutor was questioning Investigator Bellman, the following exchange took place:

> Q. At the time that you were interviewing [D.E.U.], you weren't considering him as a victim? A. No.
> Q. After your interview with [D.E.U.], what happened to the investigation? A. Well, the interview with [him] occurred on December 4th, 2018. And subsequent to that interview, I had to open a new investigation for sex abuse where [D.E.U.] was the victim, and there were two offenders this time: [Urbain] and [Halfhill].

Halfhill objected, and, outside the presence of the jury, he argued:

> Your Honor, I object to this questioning by the State. There was a hearing on this specific issue concerning statements which were made by [D.E.U.] concerning Bryan Halfhill. The witnesses— the State was instructed not to address those statements. The questions which have been asked now are that we had a—we had an interview of the child with—at school by the investigator and [DHS] and that the outcome of that is that we have to investigate— we have to open a case against Bryan Halfhill.
> The clear implication, without saying the exact quotes, is that the child said something which would indicate that Bryan Halfhill was guilty of something. . . .
> I don't think the State has the ability or should have the ability to take that interview and say we talked to him and then we had to open up an investigation of Bryan Halfhill, because the obvious implication in everybody's mind is that the kid said something.

---

[2] No one challenges the court's initial ruling that D.E.U.'s statements were inadmissible. We have not reconsidered that ruling.

Halfhill asked the court to declare a mistrial. The court overruled Halfhill's objection and denied his motion for mistrial.

On appeal, Halfhill maintains the district court's ruling was in error. As he points out, "the [S]tate 'is not permitted by means of insinuation or innuendo of incompetent and improper questions to plant in the minds of the jurors a prejudicial belief in the existence of evidence which is otherwise not admissible and thereby prevent the defendant from having a fair trial.'" *Id.* at 498 (quoting *State v. Carey*, 165 N.W.2d 27, 32 (Iowa 1969)). We agree with Halfhill that this question and answer implied to the jury that the content of D.E.U.'s out-of-court statements—which the district court had ruled inadmissible—included allegations of sexual abuse against Halfhill.[3] "If [the defendant] timely objected and the challenged testimony was backdoor hearsay, the final issue is the appropriate remedy under the circumstances of this trial." *See id.* at 494.

Here, we believe a new trial is required. Because the district court failed to recognize the issue of backdoor hearsay created by the question and answer, the court did not take any curative actions. The question and answer were not struck from the record, and nothing prevented the jury from making the inference at issue here. *See id.* at 497–98 (considering the court's willingness to strike the offending questions and answers). The State maintains the question and answer—though ultimately suggesting D.E.U. accused Halfhill of sex abuse—were admissible for the non-hearsay purposes of explaining the actions Investigator Bellman took next.

---

[3] Unlike in *State v. Swift*, ___ N.W.2d ___, ___, 2021 WL 833555, at *4 (Iowa 2021), the out-of-court declarant whose allegations were elicited by the prosecutor's questioning here was not a sworn witness. D.E.U.'s out-of-court statement had been ruled inadmissible and there was a timely objection.

*See McElroy v. State*, 637 N.W.2d 488, 501 (Iowa 2001) (providing that a statement that would ordinarily be deemed hearsay is admissible if "the statement [was] offered simply to demonstrate it was made, to explain subsequent actions by the listener, or to show notice to or knowledge of the listener."). But again, because the court did not rule the question and answer were admissible for just this limited purpose, the jury was not given any instruction to consider the evidence for the corresponding limited purpose. *See id.* at 502 (providing that if the court is to admit what would be deemed hearsay for a non-hearsay purpose, the court "must find the statement relevant to the purpose for which it is offered" and "*must limit its scope to that needed to achieve its purpose.*" (emphasis added)); *see also State v. Plain*, 898 N.W.2d 801, 813 (Iowa 2017) (considering admission of out-of-court statement to explain responsive conduct and finding the defendant was not prejudiced because "the trial court gave a jury instruction limiting the purposes for which the court hearsay testimony could be used. We have held that an instruction limiting the 'purposes for which the evidence [can] be used' may serve as 'an antidote for the danger of prejudice'" (alteration in original) (citation omitted)).

It is the State's obligation to prove this error was not prejudicial to Halfhill, *see Huser*, 894 N.W.2d at 497, and it cannot succeed under the circumstances of this trial. The evidence against Halfhill was not strong; only Urbain's testimony—the credibility of which could be questioned—directly linked Halfhill to actions of sexual abuse underlying all three counts. There was no physical evidence, and the digital evidence Halfhill suggested should exist—messages from Halfhill demanding Urbain commit sexual abuse or messages to Halfhill sharing evidence she committed the abuse—was also missing from the trial. In these

circumstances, the deliberate implication that D.E.U. told Investigator Bellman he had been sexually abused by Halfhill before Urbain ever pointed the finger at Halfhill was strong evidence of Halfhill's guilt as to each count.

Because the backdoor hearsay was improperly admitted and it was prejudicial to Halfhill, Halfhill should receive a new trial. As this issue is dispositive, we do not consider Halfhill's other claims on appeal.

**REVERSED AND REMANDED FOR NEW TRIAL.**